CHARLEY LITTLE v. THE STATE.

No. 1857.   Decided November 16, 1898.

1. **Murder — Juror — Conscientious Scruples as to Infliction of Death Penalty.**

On a trial for murder, it is competent in testing a juror's qualifications to question him as to his conscientious scruples about inflicting the death penalty in a case depending upon circumstantial evidence; and where he answers that he has such scruples, it is not error to sustain the State's challenge to such juror for cause.

2. **Same—Use of Weapon by Counsel in Argument.**

On a trial for murder, where it was shown that the murder was committed with an iron bar which had been introduced in evidence, identified, and seen by the jury, it was not improper or illegitimate for the district attorney to use it in his argument so as to illustrate the falsity of defendant's testimony as to the manner in which he had used it in committing the homicide.

3. **Same—Murder in the Perpetration of Robbery—Charge.**

On a trial for murder, where a great many circumstances found tended to show murder in the perpetration of robbery, and it was further shown that defendant was found in possession of property belonging to deceased after the murder, the court properly instructed the jury as to what constituted robbery, and that a murder committed in its perpetration was murder per se of the first degree. And such charge was not objectionable upon the ground that defendant's testimony showed, which was the only positive testimony, there being no eyewitness, that he killed deceased in self-defense.

4. **Same—Evidence.**

On a trial for murder, evidence of the acts and conduct of defendant after the killing is always admitted to show the animus which actuated him, and it would be a strange doctrine which would limit the testimony to what occurred before and at the time of the killing.

5. **Same—Charge—Manslaughter.**

On a trial for murder, a failure to charge upon manslaughter is not error where there is no evidence suggesting that issue.

6. **Same—Charge as to Reasonable Doubt Between the Degrees.**

Where, on a trial for murder, the court has instructed the jury that if they had a reasonable doubt of the guilt of defendant to acquit him, this is sufficient. It authorized the jury to acquit of any degree if they had a reasonable doubt as to such degree, and it was not necessary to give a specific charge as to a reasonable doubt between the degrees.

7. **Same—Charge on Circumstantial Evidence—Harmless Error.**

Where the court committed an error in charging upon circumstantial evidence in view of the defendant's testimony and confessions, Held, under the facts of the case no injury is shown, and defendant has no ground for complaint.

8. **Same—Recalling Witness to Testify.**

It is legitimate for the court to permit a witness to be recalled to the stand to reiterate his testimony before the jury where he gives no new testimony.

**9.  Continuance.**

A continuance will be held to have been properly overruled where, if the absent witness had been present, the evidence, if admissible, would have served no useful purpose.

**10.  Murder in the Perpetration of Robbery—Evidence Sufficient.**

See opinion for facts stated held amply sufficient to establish a murder committed in the perpetration of robbery, and to support a judgment of conviction imposing the death penalty.

APPEAL from the District Court of Hunt.  Tried below before Hon. HOWARD TEMPLETON.

Appeal from a conviction for murder in the first degree; penalty, death.

Appellant was charged by indictment with the murder of Ben Stone-cypher, on the 12th day of November, 1897, by striking him with a piece of iron.

The important facts are sufficiently stated in the opinion.

*Daniel Upthegrove, Thos. F. Ragsdale,* and *J. G. Mathews,* for appellant.—Where a trial for murder is not dependent on circumstantial evidence, but on positive evidence, it is error in the court to exclude a venireman from the jury on the grounds that he has conscientious scruples in regard to the infliction of the punishment of death for crime on circumstantial evidence, but that he has no conscientious scruples in regard to the infliction of the punishment of death for crime on positive evidence. Russell v. State, 38 Texas Crim. Rep., 590; Riddle v. State, 46 S. W. Rep., 1058; Glover v. State, 46 S. W. Rep., 824; Willson's New Statutes, art. 677; Osborne v. State, 23 Texas Crim. App., 431.

Where the act which is claimed to be criminal is established by positive evidence, and nothing left but the intent with which the act is done to be established by circumstances, the law of circumstantial evidence should not be given in charge to the jury.  Russell v. State, 44 S. W. Rep., 159; Glover v. State, 46 S. W. Rep., 824.

The court erred in failing to instruct the jury on the law of manslaughter for the following reasons, to wit: 1. The evidence clearly raises the issue as to whether or not defendant and Stonecypher were engaged in a quarrel, and that Stonecypher drew a deadly weapon on him, and that the defendant, under the immediate influence of sudden passion arising at the time, struck and killed Stonecypher.  2. Because there was no evidence to contradict defendant's theory that Stonecypher had drawn a gun on him just before and at the time of the homicide.

The court erred in failing to instruct the jury that if they believed the defendant guilty, beyond a reasonable doubt, but had a reasonable doubt as to whether he was guilty of murder in the first degree or of the second degree, they will acquit him of murder in the first degree and find him guilty of murder in the second degree, for the reason that the evidence fairly raised the issues as to murder in the first degree and murder in the second degree.  McCall v. State, 14 Texas Crim. App., 353.

*Mann Trice,* Assistant Attorney-General, for the State.—1. It is contended that the court erred in permitting counsel for the State to ask the veniremen whether or not they had conscientious scruples in regard to the infliction of the death penalty for crime on circumstantial evidence; and because the court sustained the State's challenge for cause to juror H. T. Tucker, who stated that he would not, if taken as a juror, inflict the death penalty on circumstantial evidence, no matter how strong or conclusive the evidence might be. This precise question has been decided adverse to appellant's contention in this regard. Shafer v. State, 7 Texas Crim. App., 239; Clanton v. State, 13 Texas Crim. App., 139 (see p. 152 on this point); State v. Pritchard, 15 Nev., 74; 1 Bish. Crim. Proc., sec. 918.

As said in Clanton v. State, supra: "The purpose of the law is to provide a jury who will try the case fairly and impartially, both for the State and the accused, in accordance with the law and the evidence. Circumstantial evidence is competent and legal evidence, and a juror whose convictions are such that he can not conscientiously enforce the law upon this character of evidence can not be considered a fair and impartial juror."

2. The trial court's explanation fully answers this bill.

3. The piece of iron had been introduced in evidence and fully identified as the instrument with which appellant killed deceased, and exhibited to the jury. Reference to it by counsel and handling it before the jury was competent and legitimate argument. Appellant had testified that he struck deceased when he was looking him right in the eye, and when deceased was attempting to shoot him. The body of deceased showed that he was struck in the back of the head. This argument was properly deducible from the evidence, and went directly to the credit of appellant as a witness.

3. The charge is sufficient in the absence of special instructions requested, and covers the facts in the case. The circumstances almost conclusively show that the murder was committed in the perpetration of robbery, and for that purpose, and called for a charge on that subject. The facts do not suggest a charge on manslaughter. Appellant by his testimony squarely raises the issue of self-defense, and a full, fair, and complete charge was given on that subject.

4. This court has repeatedly held that a charge on reasonable doubt applying the doctrine to the entire case, that is, on the question of guilt, is sufficient, and it is not necessary to repeat it in every paragraph of the charge. If there be any error in submitting a charge on circumstantial evidence, same was in favor of appellant. He admitted the killing, but sought to justify on the ground of self-defense. While there were strong circumstances tending to show that the killing was upon express malice, that is, in the perpetration of robbery, there was no positive proof on this phase of the case; therefore, it was not error for the court to charge on circumstantial evidence. No exception was saved to the charge on circumstantial evidence at the time the charge was given. This

was necessary in order to present any question for this court. Jones v. State, 34 Texas Crim. Rep., 490; Smith v. State, 35 Texas Crim Rep., 618.

5. No diligence whatever is shown in support of the motion for continuance. The indictment was presented November 26, 1897. Appellant was arrested about that time. The trial was had on April 25, 1898. No process was called for until in April, 1898. The evidence is ample, and no error appearing of record, it is respectfully submitted that the judgment be affirmed.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

The statement of facts shows substantially that appellant and deceased had been hired to pick cotton for one Josh Merrill, and lived together at his house for about a month. They left Merrill's on Friday, November 12th, about 1 o'clock, to go to Whitewright, where deceased expected to take the train for Denison. Deceased was not coming back, but defendant was coming back with his horse and buggy, and on Sunday was to take the deceased's trunk to Wolfe City, and forward it to him at Galveston. Deceased (Stonecypher) and defendant were seen together at Wolfe City on that Friday evening; and later on the same evening, about 6 o'clock, they were seen at Celeste, a little place in Hunt County, several miles from Wolfe City. They put up their horse, and had him fed, and also got supper themselves. About 7 o'clock they left Celeste, stating they were going to Valley Creek. Stonecypher was not afterwards seen alive by any witness. The defendant returned to Wolfe City in the buggy alone about 4:20 the next morning. The horse appeared to be very tired. He remained in Wolfe City until late that evening. The State showed that appellant returned to Merrill's late on Saturday evening, and on Sunday or Monday took the trunk of Stonecypher from Merrill's, and carried it to Wolfe City and expressed it to Galveston. Some time after this, and before November 20th, appellant and one Woodard were seen at Honey Grove; appellant stating that he was going to Tennessee. A few days subsequently they were at Detroit, to which point they had shipped appellant's trunk from Honey Grove. A few days after this, defendant and Woodard, while going across the country in appellant's buggy, were arrested in the edge of Lamar County, and brought back to Hunt County. On Saturday morning, November 13th, some time after midnight—about 4 o'clock—an outhouse belonging to one Roach, several miles from Celeste, was discovered to be on fire. It was shown that, about a year before this, appellant had worked on the premises adjoining this outhouse, and was familiar with it. Later in the day, on Saturday morning, the charred body of a man was found among the debris of the burned house. Its location was fixed as within the walls of the north room. On an examination of the body, the back of the skull was found to be crushed, evidently with some heavy bludgeon

or blunt instrument. There was no evidence, outside of the circumstances herein related, and the confessions and testimony of appellant, identifying the charred remains which were discovered as the body of the deceased, Stonecypher. The criminative facts making out the corpus delicti, and connecting appellant with the murder, in addition to what has been stated, were as follows: Deceased was shown to have been possessed of a considerable amount of money—about $100—prior to his leaving Merrill's. After the parties left there, and at Wolfe City, they were shown to be drinking. When they left Celeste, it was for the purpose of going to a house where some lewd women were believed to reside. Near the burned house, where the charred remains were found, in an old cistern, a piece of iron belonging to a plow near by was discovered. Evidently this was the instrument with which the homicide was committed, for blood and hair were found on it. The fresh tracks of a buggy drawn by a horse were followed from the burned house in the direction of Wolfe City for some distance. Appellant, though not having much money before the homicide, was shown to have immediately thereafter been possessed of a considerable amount,—some $20 bills and a $20 gold piece; and he appeared to be rather prodigal of his means, stating on one or two occasions that he had plenty of money. Appellant was also shown, shortly after the homicide, to have been found in possession of the deceased's watch, and also of a peculiar shell button belonging to deceased. The trunk of deceased, which was shown to have been shipped to Galveston, was found there, and identified and brought back after the arrest of appellant. Two confessions of appellant were introduced: One made to Woodard, his traveling companion, before his arrest, and the other to Jeff Mason, an officer, after his arrest. In the first he admitted that he had killed Stonecypher for his money, and that he got from him $108.50; that he afterwards burned the house in which his remains were, to cover up the crime. He also stated that appellant at that time had a $20 bill which had blood on it. The confession to the officer was as follows: "He said that they had left Josh Merrill's with a view of going up near Leonard to see some women; that they went to Wolfe City, and then went from there to Klondike to get some whisky, and then back to Wolfe City, and from there to Celeste; that after they got to Celeste they took supper, and had their horse fed, and after supper started to see the women in to the left of Leonard, and after they got in above Leonard they learned that the women were gone; that they turned around then, and in coming back to Celeste, and when they got to where the roads fork at John Stone's residence, at the northwest corner of his field, instead of turning square to the left, as they had gone, they kept straight forward, coming south, which turned them to the right of his premises, and around by Lane's store; that he, being familiar with the premises, and knowing that it did not make much difference as to the distance, continued the route around by Lane's store to Celeste; that when they came to this old house on their route, which was close to the road, Stonecypher spoke to him about stopping and playing a game of cards; that they stopped first

at the old barn, and lit a candle, but the wind was blowing so that they could not keep the candle lighted; that they saw, from the plunder and rubbish and cotton on the front porch, that no one lived in the old house, and went up there and went to playing; that they had played a few games, and defendant caught Stonecypher stealing cards; that he told him about it, and said that he had some cards under his knee; they were sitting, playing on the front porch; that there was considerable old plow gears, rubbish, and plow implements stacked up on the porch, which was to the defendant's back as they played cards; that defendant and Stonecypher carried the former's gun with them that evening when they left, and that, when they got out of the buggy, Stonecypher carried defendant's gun; that the gallery fronts the north, and fronts on the big road; that, while they were playing, Stonecypher's back was to the east, and he had defendant's gun lying down on his right side; defendant's back was to the west; that, when he caught Stonecypher stealing cards, that he accused him of stealing cards, and that they got into a row over it, and that Stonecypher raised the gun on him, and he reached back behind him and found the iron bar, and hit Stonecypher in the head and killed him; that he did it to keep Stonecypher from killing him; that he had to do it; that they were playing cards there by the candlelight, Stonecypher having bought a couple of candles in Celeste; that he was very nervous just at the time of and just after the killing, and excited; that he got off of the gallery and walked around the house, and there was an old well there, and that he threw the old bar of iron in the well, and then returned to Stonecypher, and saw that he was dead; and that he picked up his gun, that was clenched in Stonecypher's hands, and set the house on fire to prevent detection; then he left and came back to Wolfe City, and stayed around there a day or two, and then went and got Stonecypher's trunk and shipped it to Stonecypher, at Galveston, from Wolfe City." Appellant's testimony as to the homicide was substantially the same as his confession to Mason, the officer. His testimony tending to show self-defense is stronger and more in detail than in his confession. There is also this difference between his confession to Mason and his testimony on the trial: In his confession to Mason he stated that he burned the house to prevent detection of the crime. On the trial he stated that he did not know the house was destroyed by fire, and did not know how it caught fire, unless it was from candles they used while they were gambling. The State combatted this theory of self-defense by showing that the homicide did not occur on the gallery at all, as stated by appellant, but the remains, with the skull crushed in, were found at a spot inside one of the rooms of the house; further, that the implement or bludgeon with which the blow was given was not on the gallery, but had evidently been taken by appellant from the plow which was outside in the yard; and, further, that the fruits of the robbery were shown to have been in the possession of appellant after the homicide.

On the impanelment of the jury, appellant excepted to the action of the court allowing the State to question the jurors as to whether or not

they had conscientious scruples in inflicting the death penalty in a case depending on circumstantial evidence; and he further objected to the court sustaining a challenge to one of the jurors (Tucker), who, in reply to said question, stated that he had conscientious scruples in such case. This question has heretofore been settled by the decisions of this court, and we think properly. See Shafer v. State, 7 Texas Crim. App., 239; Clanton v. State, 13 Texas Crim. App., 139, and authorities there cited.

There is nothing in appellant's second bill of exceptions in regard to the impanelment of the jury.

Appellant reserved an exception to the use by the district attorney in his argument of the bar of iron which had been introduced in evidence, and identified as the weapon with which the homicide was committed; the grounds of his objection being that there was no evidence before the jury of the weight of said bar of iron, and that its exhibition and use in such manner by the district attorney were calculated to inflame the minds of the jury. It was not necessary, in order to illustrate with the bar of iron, that it should have been weighed. It had been introduced in evidence, had been seen by the jury, and its use by the district attorney in the way of illustration, and his insistence that the homicide could not have been committed with one hand, in the manner testified by appellant, was, we think, permissible. It was as much allowable for the State to so use it as it would have been for the defendant's counsel to have used it in argument in order to show that it was entirely practicable to have committed the homicide with it as testified by appellant. So far as the desire of the jury to have the bar of iron sent to the jury room is concerned, this was not permitted by the court, and we do not understand counsel to urge an objection on the ground that the court refused to allow the jury to have said bar of iron.

The court instructed the jury that all murder committed with express malice, and all murder committed in the perpetration or in an attempt to perpetrate the crime of robbery, is murder in the first degree, and then instructed the jury what constituted robbery, and told them that, if a homicide was committed in the perpetration or attempt to perpetrate robbery upon another, the homicide is murder, per se, of the first degree, and further instructed them, if they believed that appellant killed deceased in perpetrating robbery, to find him guilty of murder in the first degree. This charge was objected to on the ground that there was no evidence to authorize such a charge; that the testimony showed that the row occurred over a game of cards, and not for the purpose of robbery; that, if the evidence showed that appellant was afterwards found in possession of any of the goods and money of deceased, this was after the homicide, and did not serve to characterize it as a homicide in the perpetration of robbery. We understand from this that appellant insisted that, inasmuch as his is the only positive testimony regarding the circumstances attending the homicide, the State is constrained by this testimony, and the court was authorized to present only the phase of the case arising under his evidence in the charge to the jury. If this be true, then

the court would have discharged his full duty if he had instructed the jury to find the defendant not guilty, for his testimony singled out shows a case of homicide in self-defense. We do not understand this to be the rule. On the contrary, the State's whole fight in this case was to show by circumstances that the homicide was committed in the perpetration of robbery, and a great many circumstances are adduced in evidence tending to establish this view of the case, and also appellant confessed to this motive, and the court, in our opinion, was authorized to instruct the jury as it did. See Roach v. State, 8 Texas Crim. App., 478; Sharpe v. State, 17 Texas Crim. App., 486; May v. State, 33 Texas Crim. Rep., 74.

The court instructed the jury that in determining the grade of the homicide, and in order to determine whether the killing was murder in the first degree, they could consider all the facts and circumstances in the case at the time of the killing, and before and after that time, having connection with or relation to it, etc. This charge was objected to because it instructed the jury that they might take into consideration facts and circumstances after the death of Stonecypher to show whether or not he had before that time been unlawfully killed with express malice. Under all the authorities, evidence of the conduct of the defendant after the killing is admissible to show the animus that actuated him at the time, and it would be a strange doctrine that would limit the testimony to what occurred before and at the very time of the killing. If testimony is admissible subsequent to the killing to show the state of mind, it is proper for the jury to look at such subsequent testimony in order to aid them in ascertaining the state of mind and the purpose for which the homicide was committed. As illustrative of this, take the case in hand. If the homicide was committed for the purpose of robbery, as contended by the State, we would expect to find the actual taking of the money and goods from the body of the deceased after the homicide, and not before. Such is the general experience where murder is committed for the purpose of robbery.

We fail to find in the record any evidence that suggests a killing on manslaughter, and the court did not err in failing to charge this view of the case to the jury. Appellant objected to the refusal of the court to instruct the jury that they were the exclusive judges of the weight of the evidence and the credibility of the witnesses, and also because he failed to instruct the jury as to a reasonable doubt between the degrees of murder. As to the first objection, a reference to the charge shows that the court did instruct the jury that they were the exclusive judges of the weight of the evidence and the credibility of the witnesses. The court furthermore instructed the jury, if they had a reasonable doubt as to the guilt of the defendant, to acquit him. This applied to all the degrees, and it was not necessary for the court to give a specific charge as to a reasonable doubt between the degrees. The charge in question, as given, authorized the jury to acquit of any degree, if they had a reasonable doubt of the guilt of defendant of that particular degree.

Appellant also objected to the court's charge on circumstantial evidence. A number of grounds of objection are assigned to this charge of the court. Among others, it is insisted that appellant himself having testified, and the State having also proved his confessions, this took the case out of the rule applicable to circumstantial evidence. Concede this, and yet we fail to see how appellant was injured by the charge of the court. Indeed, the court required a stricter rule, before the jury would be authorized to convict the defendant, than that insisted upon by appellant himself.

There is nothing in appellant's exception to the action of the court with reference to having the witness Patton reiterate his testimony before the jury. If he had stated some new testimony, it might have been improper, but it appears that he stated nothing new. Nor is there anything in appellant's motion for a continuance. The testimony of the absent witnesses was not material. If they had been present their evidence would have served no useful purpose, even if it had been admissible.

We have examined the statement of facts carefully, and in our opinion the evidence supports the finding of the jury. The circumstances in connection with the confessions and testimony of appellant sufficiently identified the body found in the burned building as that of the deceased, and established the corpus delicti, to wit, that he came to his death by violence at the hands of appellant. Anderson v. State, 34 Texas Crim. Rep., 546; Kugadt v. State, 38 Texas Crim. Rep., 681. Furthermore, the testimony establishes beyond any reasonable doubt that the motive for the homicide was robbery. There being no error in the record, the judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]