BUD BORDERS v. THE STATE.

No. 2667.    Decided November 26, 1913.

**1.—Murder—Conscientious Scruples—Death Penalty—Jury and Jury Law.**

Upon trial of murder, there was no error in permitting State's counsel to ask the jurymen upon their examination whether they had any conscientious scruples against inflicting the death penalty where the State depended upon circumstantial evidence, and where they had such scruples, to sustain the State's challenge; besides, it was not shown that any objectionable juror served on the case. Following Shafer v. State, 7 Texas Crim. App., 239, and other cases.

**2.—Same—Evidence—Practice in District Court.**

While there was no reversible error in the act of State's counsel to hand the pistol with which the killing was alleged to have been done to a juror, and

ask him to see if he, if it were loaded, could shoot himself at the point where the wound was shown to have been inflicted upon the deceased, yet such practice should not be indulged in.

**3.—Same—Argument of Counsel—Practice on Appeal.**

In the absence of a requested instruction to disregard the language and conduct of the State's counsel to the effect that he pointed at defendant and called him a cold-blooded brute, the same was not reversible error under the facts. in the case.

**4.—Same—Charge of Court—Reasonable Doubt—Negative.**

Where, upon trial of murder, the court's charge on the different degrees of murder and on manslaughter properly submitted the law to the facts and applied the reasonable doubt as between the degrees of unlawful homicide, it is not necessary to so instruct them in the paragraphs submitting the different degrees or on the negative.

**5.—Same—Exculpatory Statements—Charge of Court.**

Where, upon trial of murder, the defendant claimed that his wife, the deceased, killed herself and the court instructed the jury to acquit the defendant if this was the case or if they had reasonable doubt thereof, and the jury found the defendant guilty, this necessarily included that his exculpatory statements were not true.

**6.—Same—Circumstantial Evidence—Charge of Court.**

Where the court's charge on circumstantial evidence followed approved precedent, the same was sufficient.

**7.—Same—Sufficiency of the Evidence.**

Where a conviction of murder in the first degree was sustained by the evidence, there was no reversible error on that ground.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The testimony shows that all parties were negroes and that defendant and his wife, the deceased, occupied a room in Molly Goin's house in Freedmantown, a negro district of Waxahachie, Texas; that the house in which the killing occurred had a front gallery, a back gallery and a hall, the front door opening into the hall; that witness' room in this house was to the left side of the hall, going in the front door; that defendant and his wife's room was on the right side of the hall, going in the front door, across the hall from witness' room, but not directly opposite, but that the doors were opposite; that there was a door in the back end of the hall and the dining room was beyond that hall; that Molly Goin's room was south of witness' room adjoining same; that the back gallery was south of the dining room, etc.; that the door in defendant's room opened into the room; that this witness, Molly Goin, defendant and deceased were the only occupants of the house at the time of the killing, but other witnesses were near and heard the shots fired, etc.; that defendant and his wife had had some wrangling an hour or two before the fatal shot was fired and that in some manner, deceased then fired the pistol which the defendant had procured from some one the night before, the bullet striking overhead in the ceiling;

that she carried the pistol out into the hallway, defendant following her, taking the pistol away from her and slightly wounding her hand in wringing it from her; that after this, defendant left the house and was gone probably an hour, returned and called deceased to come into his room; that Molly Goin interfered and had defendant to come into her room where deceased was, and had him lay the pistol on the dresser; that a short while thereafter, defendant and deceased went into their own room where the wrangle over certain letters defendant had found continued; that one of State's witnesses and the said Molly Goin heard their conversation or parts of it at different times, and heard defendant make threats to or about deceased, while defendant and deceased were wrangling, one of which was that defendant would kill deceased or she would kill him, and another was that he was going to find that negro man and beat his brains out and come back and shoot out the brains of the deceased, etc.; that after the parties had been in said room awhile, the witness heard a gun fire in the room and rushed out into the dining room into the hall, when deceased came out of her room, not saying anything except "Mother Goins," which was the name by which the witness went, the latter exclaiming, "Oh, Bud, you have killed Bell!" that deceased had one hand up and the other hanging down and fell on the trunk against the hall, dead; that defendant came right out behind her and began to tear her garments from her to see where she was shot, saying, "Bell ain't dead," witness replying, "Yes, Bell is dead," defendant saying, "I did not do it," etc.

There was also testimony that when defendant realized that his wife was dead, fell down upon her body and used many expressions of grief.

The defendant testified that he charged his wife with being false to a friend and deceiving her in regard to her husband, and told her he was going to tell and report her to the lodge, etc., whereupon she grabbed the pistol and said that she would not face it, etc., and shot herself. Defendant made this explanation at different times, etc.

The physician who examined the deceased's body found that the ball struck the wrist and came out in the palm of the hand; a wound between the fourth and fifth ribs, about five and one-half inches from the median line, ranging downward and coming out between the ninth and tenth ribs on the same side of the backbone, grazing the backbone; that the wound in the woman's breast caused her death, the physician sticking his finger down in the wound could touch the heart; that this wound was in the left side; that the bullet that made the wound on the wrist went in slanting a little and entered on the back of the hand, coming through and out in the palm of the hand and then entered the breast; there was powder in the hand clear through, most of it, however, being on the palm of the hand, etc.

*Farrar & McRae,* for appellant.—On the question of exculpatory statements: DeLeon v. State, 155 S. W. Rep., 347; Jones v. State, 29 Texas Crim. App., 20; Pharr v. State, 7 id., 472.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life.

In the first bill of exceptions appellant complains that the court permitted the county attorney to ask the jurymen on their examination the following question: "Have you any conscientious scruples against inflicting the death penalty as a punishment for crime where the State depends upon circumstantial testimony for a conviction?" and when the jurymen answered they had, the court sustained the challenge of the State to such jurors.   As it is not shown that any juror objectionable to defendant served on the jury, we might pass the question in this way, but under our decisions, beginning with Burrell v. State, 18 Texas, 713, when the Supreme Court had jurisdiction in criminal matters, on down to this date it has been held that such question was a proper one, in cases where the State depended on circumstantial evidence to sustain a conviction, and the action of the court in sustaining the challenge was also proper.   Shafer v. State, 7 Texas Crim. App., 239; Clanton v. State, 13 Texas Crim. App., 139; Little v. State, 39 Texas Crim. Rep., 654.

The next bill complains that the prosecuting attorney took the pistol which had been introduced in evidence, and which was the pistol with which the woman was killed, and handed it to one of the jurymen, and said, "Try and see if Belle Borders could have inflicted the wound which killed her, in the place it was located." The length and size of the pistol are shown by the record; the evidence locates the wound just below the nipple in the breast, and its point of exit in the back, and as it was permissible for the prosecuting officer to argue and demonstrate that it was impossible for one to inflict the wound on one's self instead of handling the pistol himself, to hand it to the juror and ask him to see if he could shoot himself at the point where the wound was shown to have been inflicted on the woman, would present no reversible error under the record, but this practice should not be indulged in.

The only other bill in the record complains that the prosecuting officer in his opening address pointed his finger at defendant and called him "a cold-blooded brute" and called him an animal.   While the prosecuting officer ought never to use epithets of any character, yet the killing as shown by the evidence in this case was done in rather a deliberate and brutal manner, and under such circumstances the language used would not present reversible error, and especially is this the case when no special charge was requested in regard thereto.

No special charges were requested, but there are several complaints in the motion for a new trial of the charge as given.   The first ground is that the court in his charge on murder in the first degree failed to charge "the negative of the facts constituting said degree."   The same

complaint is made as to the court's charge on murder in the second degree, and the court's charge on manslaughter. The court in his charge defined murder in the first and second degree in terms frequently approved by this court, and required the jury to find affirmatively those facts to exist beyond a reasonable doubt before they would be authorized to convict. And then defined manslaughter as applicable to the facts of this case, and required the jury to find beyond a reasonable doubt those facts existed before they would be authorized to convict. He then instructed the jury: "If from the evidence you are satisfied, beyond a reasonable doubt, that the defendant is guilty of murder, but have a reasonable doubt whether it was committed upon express or implied malice, then you must give the defendant the benefit of such doubt, and not find him guilty of a higher grade than murder in the second degree. Or, if from the evidence you believe, beyond a reasonable doubt, that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense is murder of the second degree or manslaughter, then you must give the defendant the benefit of the doubt, and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter." In addition to this he gave the usual charge on presumption of innocence and reasonable doubt. Having instructed this jury to give the benefit of a reasonable doubt as between the degrees of unlawful homicide, it was unnecessary to so instruct them in the paragraphs submitting the different degrees.

The court did instruct the jury that they must find the exculpatory statements untrue, or they would acquit him. Defendant as a witness testified that deceased killed herself, and in the statement made to the county attorney he made the same statement. The court instructed the jury: "If you believe that Belle Borders killed herself, or if you have a reasonable doubt thereof, you will acquit the defendant." If they found that deceased did not kill herself, this necessarily included a finding that his exculpatory statement was not true.

The charge on circumstantial evidence does in terms instruct the jury that they must believe that defendant and no other person killed deceased. This charge is in language frequently approved by this court, and concludes: "Unless the evidence in this case has established to your satisfaction beyond a reasonable doubt, and to a moral certainty, that the defendant killed Belle Borders, *and excludes every other reasonable hypothesis except that he killed her,* then you will find the defendant not guilty."

The evidence amply supports the verdict, and the judgment is affirmed.

*Affirmed.*