RICHARD JOHNSON v. THE STATE.

No. 15168.   Delivered May 4, 1932.
Rehearing Denied June 8, 1932.
Reported in 50 S. W. (2d) 831.

The opinion states the case.

*J. Earle Kuntz* and *J. Walter Friberg,* both of Wichita Falls, for appellant.

*Sam B. Spence,* District Attorney, and *George W. Anderson,* Asst. District Attorney, both of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment that appellant, with malice aforethought, killed A. N. (Ted) Nodurft by shooting him with a pistol.

Vera Smith and deceased were engaged to be married. On the night of September 9, 1931, they were riding in an automobile in the city of Wichita Falls. They had stopped their car in a quiet place and were sitting talking, when they noticed two black forms approaching the car. Deceased attempted to start the car, but was unsuccessful. He was still endeavoring to start the motor when two negroes came up to the side of the car, presented a pistol, and ordered him to stop. Vera Smith testified, in substance, as follows: Appellant said to deceased: "Don't try to start the car." At this time appellant was standing right by the side

of deceased. After commanding deceased to desist, appellant fired a shot at him. Deceased fell back into the car, mortally wounded. Appellant and his companion ordered the witness out of the car, taking her some distance away from the car, made a criminal assault on her. Appellant forcibly took a diamond ring and wrist watch from her. After robbing and assaulting her, the negroes ordered her to leave in the automobile. She drove to town with deceased. Deceased was placed in a hospital, where he died in a few hours.

Touching the identification of appellant, Vera Smith said: "In my opinion, from his looks, his build and his voice and the way he talks, in my opinion he is the same negro." She also expressed the opinion that Richard Brown was the other participant in the commission of the offense. In his written voluntary statement appellant admitted that he was present on the occasion in question and participated with Richard Brown in the robbery of Vera Smith. He denied in his confession that he fired the shot that killed deceased, saying that Richard Brown fired the fatal shot. He said, in his confession, that he was guilty and knew that he must pay the penalty for his crime. The ring taken from Vera Smith was traced to the possession of appellant. Appellant offered no testimony.

Appellant filed a motion to set aside the indictment, alleging therein that all persons of the African race were excluded from the grand jury returning the indictment against him, because of their race and color. He averred that he had been denied the equal protection of the laws, and his civil rights guaranteed to him by the Constitution and laws of the United States. The court heard evidence on the motion. The proof developed that all of the jury commissioners appointed by the court were white men. The trial judge testified, in substance, that he was aware that there were a number of qualified negro jurors in Wichita county. He denied that he would select white men in every event in preference to negroes to serve on the jury commission, saying that he would not intentionally discriminate against a negro on account of his race or color in the selection of jury commissioners. There was nothing in his testimony to show that he considered placing negroes on the jury commission, and rejected them. One of the jury commissioners, who resided in the city of Wichita Falls, testified for appellant on the motion that in selecting the grand jury it had been the practice to select white men. He said, in effect, that he did not believe that negroes were competent grand jurors bcause of the fact that they were negroes. He said, further, as far as he knew, negroes had never been selected to serve on grand juries in Wichita county. He testified, however, that the question of selecting negroes was not discussed by the commission. The second jury commissioner testified that he knew of only one negro in his precinct qualified under the law to serve as a grand juror. He said that in selecting the grand jury the commission did not bring up for consideration the names

of any negroes. He testified, further, that the court instructed them to select good leading citizens in the county. He said that he would not have rejected negroes from the grand jury because of their race and color. His testimony was to the further effect that no negroes' names were mentioned during the selection of the grand jury, and that none was considered and rejected. The third jury commissioner testified that nothing was said about selection of any negroes on the grand jury, the question not being discussed at all by the commissioners. He said he took into consideration only the qualifications of the persons he selected. He asserted that the commission did not intentionally and deliberately leave negroes off of the grand jury. In effect, he testified that if the names of negroes had been brought up and considered in connection with the names of white men he would have endeavored to select those he thought best qualified to serve as grand jurors. According to the testimony of other witnesses, the percentage of negro population in Wichita county was from 2½ to 10 per cent. What percentage of the negro population was qualified to serve as jury commissioners or grand jurors was not shown. The effect of the testimony of all of the commissioners was that no negroes were considered or mentioned as grand jurors, and none rejected.

The opinion is expressed that the evidence heard by the trial court warrants the conclusion that the jury commission fairly and honestly endeavored to discharge their duty, and did not in fact discriminate against the negro race in the selection of the grand jury. It appears that in so far as the commissioners were concerned there was no intentional effort on their part to discriminate against the colored race. On the contrary, the facts warrant the conclusion that the matter was not brought up to be acted upon. We understand the rule to be, under the decision by the Supreme Court of the United States in Carter v. Texas, 177 U. S., 442, 20 Sup. Ct., 687, 44 L. Ed., 839, that, in order to sustain the allegation of discrimination, the proof must show that negroes were excluded or discriminated against solely because of race or color. Thomas v. State, 49 Texas Crim. Rep., 633, 95 S. W., 1069; Thompson v. State, 45 Texas Crim. Rep., 397, 77 S. W., 449; Hubbard v. State, 43 Texas Crim. Rep., 564, 67 S. W., 413; Pollard v. State, 58 Texas Crim. Rep., 299, 125 S. W., 390.

In the recent case of Ramirez v. State, 119 Texas Crim. Rep., 362, 40 S. W. (2d) 138, it was sought to set aside the indictment on the ground that the Mexican race had been discriminated against in selecting the grand jury. The proof showed in that case that no Mexican had ever been selected on the grand jury in Menard county, and that there were several tax-paying Mexicans in the county. Some witnesses expressed the opinion that these Mexicans were not sufficiently intelligent to serve on grand juries. One of the jury commissioners testified that Mexicans were not considered in selecting the grand jury, but that the entire list

of Mexicans was disregarded. This jury commissioner said that he would not select a negro or Mexican on the grand jury, notwithstanding he might be as well qualified in every way to serve as any white man. He testified, further, that he was opposed to Mexicans serving on the jury. The other witnesses testified that the names of Mexicans were not brought up for consideration and rejected. This court reached the conclusion that the evidence failed to show discrimination in the formation of the grand jury. On petition for writ of certiorai, appellant sought to have the question reviewed by the Supreme Court of the United States. The petition was denied on October 26, 1931.

The opinion is expressed that the trial court was not in error is overruling the motion to set aside the indictment.

Appellant brings forward several bills of exception in which he complains of the argument made by the district attorney. In one of these bills it is recited that the district attorney used language as follows: "Two negroes forgetting that they were black and taking a white girl." Other bills embrace remarks of a similar nature. Remarks of counsel must be weighed and appraised in the light of the facts of the case on trial. The remarks embraced in the bills of exception cannot be approved as models, and under some circumstances might seriously affect the issues involved. In the light of the uncontradicted evidence before the jury in the present case, the argument in question is not regarded to be of such a nature as to have impaired the rights of appellant. Manifestly the record reflects the judgment of the jury on the facts. We are unable to reach the conclusion that the bills of exception reflect reversible error. See Frizzell v. State, 30 Texas Crim. Rep., 42, 16 S. W., 751; Borders v. State, 72 Texas Crim. Rep., 135, 161 S. W., 483; Jackson v. State, 118 Texas Crim. Rep., 443, 42 S. W. (2d) 433.

It appears from bill of exception No. 9 that the district attorney, in closing his argument, used language as follows: "Let your verdict be what everyone in my ear wants it to be 'death.'"

The court sustained appellant's objection to the remarks, and orally instructed the jury to disregard them. Appellant contends that the remarks were of an obviously prejudicial nature, and that reversible error is presented notwithstanding the fact that the court instructed the jury not to consider them. It is his position that the argument was calculated to impress the jury with the view that those in attendance upon the trial desired the jury to return a verdict assessing the death penalty. We do not understand that the language of the district attorney was calculated to impress the jury with the view that public sentiment demanded the infliction of the extreme penalty. On the contrary, the jury might well have believed that the district attorney meant that the members of the jury felt that appellant deserved death, and that he was urging them to have the strength to vote their convictions. In any event, the conclu-

sion is inescapable that the jury looked alone to the facts and circumstances in evidence in assessing the penalty. In Silver v. State, 110 Texas Crim. Rep., 512, 9 S. W. (2d) 358, this court, speaking through Judge Hawkins, used language as follows: "Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Texas Crim. Rep., 553, 248 S. W., 695; Coates v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891; Vineyard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548." See, also, Jackson v. State, 118 Texas Crim. Rep., 443, 42 S. W. (2d) 433.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—After an examination of the record, the opinion and the motion for rehearing, we are of the same mind touching the proper disposition of the appeal as was announced on the original hearing.

The motion is therefore overruled.

*Overruled.*