## CARRASCO v. STATE.

### No. 17986.

Court of Criminal Appeals of Texas.
May 13, 1936.

Rehearing Denied June 24, 1936.

L. V. Dodson, L. R. Stein, A. L. Carlton, and C. W. Croom, all of El Paso, for appellent.

Roy D. Jackson, Dist. Atty., and John W. Penn, Asst. Dist. Atty., both of El Paso, and Lloyd W. Davidson, State's Atty., of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, death.

The trial was held in Hudspeth county on a change of venue from Culberson county.

Deceased, Mary Smith, and her husband, Riley Smith, resided on a cattle ranch in Culberson county. Apellant was employed by them and was the only other person living on the ranch. He occupied

a part of a tool house, a short distance from the Smith residence. On the night of June 2, 1934, between 11 and 12 o'clock, appellant went to the town of Van Horn in a Ford truck belonging to the Smiths and reported to Manuel Dianda and Constable H. B. Clark that he had been out looking after some stock watering places and upon his return to the ranch had found the house burning. He also said to the parties that he feared that Mr. and Mrs. Smith were in the burning house. After the house had been destroyed by the fire, a search was made and the bodies of deceased and her husband were found in the ruins of said house. The corral was about one hundred yards from the residence. Witnesses observed a wheelbarrow track from said corral to the back steps of the house. There were blood and a piece of skull along the track. A wheelbarrow with blood on it was found on the premises. When questioned concerning its condition, appellant said that he had killed a sick calf the day before and carried the body in the wheelborrow out into the pasture and burned it. The sheriff went into the pasture and found the carcass of a dead animal, partially burned, but it appeared to have been dead for several weeks. There was blood on appellant's boots. Said boots were placed in the human tracks along the trail of the wheelbarrow leading from the corral to the house. They were an exact fit. A cane which Mr. Smith usually carried was found in the corral with blood on it. Inside the feed house opening into the corral officers found the brains of a human being and particles of skull bone. Blood was found on manure in the corral; and a large quantity of manure had been removed to a depth of three or four inches, and apparently raked or smoothed over. A pile of manure with blood in it was found behind a chicken house. Tire tracks identical with tires on the truck which was in the possession of appellant on the day of the homicide, and which he was driving at the time he notified the officers of the fire, led from the corral to this pile of manure. Blood was found on the steering wheel, horn, and other parts of said truck. There was also a hoe in the truck with blood on the handle and also just above the blade. A part of a shirt which had been burned was found near a gas pump. There was blood on the gas pump. Also part of a shirt with blood stains on it was found in appellant's bed clothing. A pair of pants with part of a leg cut away were found hanging on the wall near appellant's bed. There were slight blood stains on the remaining portion of the leg. Mr. Smith's shotgun, rifle, and pistol, which were kept in his bedroom, were found in the room occupied by appellant. The pistol was in appellant's trunk. Blood stains were found on appellant's hat. When he was arrested, witnesses observed blood stains on his underclothes. A five-gallon kerosene can usually kept in a store room was found near the body of deceased. In a written statement appellant said: "Mrs. Smith and I took the body of Mr. Smith up to the house after I had killed Mr. Smith. I picked up a stick of wood and hit her on the head with it. It was about 7:30 last night that I killed Mrs. Smith."

On the trial appellant repudiated his confession and testified that he was not at the ranch house at the time of the homicide. In short, his testimony was to the effect that he had nothing to do with the deaths of deceased and her husband.

■ Appellant is a Mexican. When the case was called for trial, he made a motion to set aside the indictment because of alleged discrimination against the Mexican race on the part of the jury commission in selecting grand jurors. In bill of exception 17, it is stated that there were approximately 585 qualified voters in Culberson county, 60 of whom were Mexicans; and, further, that no Mexican had been summoned on a grand jury since 1932. There is nothing in the record to indicate that Mexicans were excluded or discriminated against solely because of race. There is nothing to show that the 60 Mexicans residing in said county were male voters. That Mexicans had not theretofore been rejected is shown by the fact that they had served on grand juries as late as 1932. The indictment herein was returned in October, 1934. In the light of the record, we are constrained to uphold the action of the trial court in overruling the motion. In order to sustain the allegation of discrimination, the proof must show that Mexicans were excluded or discriminated against solely because of race. Johnson v. State, 121 Tex.Cr.R. 392, 50 S.W.(2d) 831, and authorities cited.

■ Bill of exception No. 1 sets forth that appellant filed a motion to quash the special venire on the ground that there

were only six Mexican jurors on same. The bill shows there were 500 qualified voters of American nationality in the county and 17 qualified voters of Mexican nationality. We think it apparent that appellant's contention that he was discriminated against was not sustained by the proof. In the same connection, it is appellant's contention that the sheriff discriminated against Mexicans in summoning talesmen. We find no sufficient proof in support of the allegation.

In his brief appellant asserts that the trial judge, in ordering talesmen, failed to administer the oath to the sheriff and his deputies. We fail to find in the record any bill of exception supporting the claim that the statutory oath was not duly and properly administered.

■ Bills of exception 14 and 15 relate to appellant's objection to proof of the facts and circumstances relative to the death of Riley Smith, the husband of deceased. The court was not in error in permitting the state to make such proof. That the killing of deceased and her husband both grew out of the same transaction and were practically contemporaneous is shown by the evidence. The crimes were intermixed and blended with one another, and so connected that they formed an indivisible criminal transaction. The killing of the husband of deceased was a part of the res gestae of the killing of deceased. Claxton v. State, 109 Tex.Cr. R. 345, 4 S.W.(2d) 542; Ortiz v. State, 123 Tex.Cr.R. 633, 60 S.W.(2d) 441.

■ Several bills of exception relate to the action of the court in overruling appellant's challenge for cause to certain jurors after he had exhausted his peremptory challenges. These bills set out at length the examination, questions, and answers of said veniremen. It appears that from hearsay they were of the opinion that deceased was dead and that her body had been found in the burned house. They declared, however, that they had no fixed opinion concerning the matter and if selected would be governed by the evidence adduced on the trial. They entertained no opinion as to the guilt or innocence of appellant. We think the holding in Hassell v. State, 107 Tex.Cr.R. 541, 298 S.W. 293, 295, sustains the action of the trial court. We quote from the opinion in said case as follows:

"While there is some variation in the verbiage of the examination of the other jurors, the bills of exceptions are not materially different from that in the one mentioned above. Each of the jurors said that he had no fixed opinion; that he had formed an impression touching the case, but it would require no evidence to remove it, and that it could and would be discarded. By article 616, C.C.P., a juror is not disqualified by reason of the matters contained in subdivisions 1 to 11. Subdivision 12 relates to bias or prejudice. It is commanded (in subdivision 13) that the trial judge shall interrogate the juror who claims to have an opinion—

"'And, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case.'

"In the instant case, the examination of the jurors seems to bring the ruling of the court within the scope of the discretion vested in the trial judge by the thirteenth subdivision of the statute mentioned. See Ellison v. State, 12 Tex.App. 557; Bartlett v. State, 82 Tex.Cr.R. 468, 200 S.W. 839; Ashton v. State, 31 Tex.Cr. R. 479, 21 S.W. 47; and other cases collated in Branch's Ann.Tex.P.C. § 561; 2 Vernon's Tex.Crim.Stat., 1916, art. 692, notes 37, 38, pp. 377, 378; Sapp v. State, 87 Tex.Cr.R. 606, 223 S.W. 459."

We have carefully examined all of appellant's contentions and are of opinion that the record fails to reflect reversible error.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

LATTIMORE, Judge.

Appellant, through counsel recently employed, seeks a postponement of this case

until another term of this court, setting up that counsel who tried the case is and has been ill. He also files a motion for rehearing.

The indictment herein was returned in August, 1934, and the case was tried in May, 1935. Counsel originally employed was present, and, as far as we can judge from the record, ably represented appellant on the trial. We have critically reviewed the record, and same presents the appearance of a case carefully tried, and one in which every point was raised which could be, in appellant's defense, and no suggestion of neglect or lack of diligence is found. We would be glad to grant appellant's request for postponement, if justified under the law, and if we could find any reasonable ground for belief that by granting same something could be done in behalf of this appellant which has not been done, or some adequate defensive theory be supported upon grounds appearing in the record, but not advanced or considered up to this time. We take it that recent counsel know that the case must rest upon the record made in the trial in the court below.

The facts are fully set out in our original opinion, in which also we discussed all the legal questions raised. In the motion to postpone it is said that recent counsel can show this court that the corpus delicti was not established. This is the only point stressed in the motion. By corpus delicti, in a murder case, is meant only that the death of the alleged deceased must be shown, and that same was the result of the criminal agency of the accused. It is the settled rule in Texas that the confession of the accused may be used in the establishment of the corpus delicti. Kugadt v. State, 38 Tex.Cr.R. 681, 44 S.W. 989. This case has been often approved. It is also a recognized rule of law that the corpus delicti may be established by circumstantial evidence. Enough criminating facts are stated in our original opinion, including appellant's confession, to establish beyond cavil not only the death of the Smiths, but also that such death was brought about by criminal means, and in appellant's confession he pointedly admits killing both of them. His confession was corroborated by the numerous things set out in our original opinion, and others to which attention was not called.

Appellant as a witness denied making the confession, but we note that he also denied many other guilty circumstances, the truth of which was affirmed by disinterested witnesses. We do not feel at liberty to grant appellant's motion to postpone, because we cannot conceive how any further investigation of the law of corpus delicti could bring us to any different conclusion; and we find nothing in the motion for rehearing causing us to conclude that we erred in the affirmance of the case.

The motion for rehearing is overruled.