SAM GRANT v. THE STATE.

No. 1531. Decided May 8, 1912.

Rehearing denied June 19, 1912.

**1.—Murder—Evidence—Accomplice—Corroboration.**

Upon trial of murder, there was no error in permitting the accomplice to testify what took place between him and defendant the evening before up to the time the accomplice says defendant suggested to him to return next morning and kill the deceased, and what they agreed to do after the money was divided, and permit other witness to testify that they saw two men the evening before at the times and places detailed by the accomplice, and that one of them was recognized as the defendant, etc.

**2.—Same—Accomplice—Charge of Court.**

Where, upon trial of murder, the court's charge on the question of accomplice testimony was in exact terms of approved precedent, there was no reversible error in refusing special charges thereon. Following Campbell v. State, 57 Texas Crim. Rep., 302, and other cases.

**3.—Same—Remarks by Judge—Witness Turning State's Evidence.**

Where, upon trial of murder, the court warned the accomplice that he need not testify and that any statement he made could be used against him, etc., and the defendant objected to these remarks because the State had made a con-

tract with said accomplice not to prosecute him, whereupon the court at the request of the defendant instructed the jury that the State would be bound by that agreement, etc., there was no reversible error.

**4.—Same—Evidence—Moral Turpitude.**

Where it appeared that the State's witness had not been indicted in regard to any of the matters inquired about by defendant's attorney, and no complaint filed against him, the court correctly sustained an objection that he could only inquire as to any offense of the grade of felony or involving moral turpitude, and defendant's counsel was not authorized to ignore this ruling and persist in asking these questions.

**5.—Same—Evidence—Reproduction of Testimony.**

Where, upon trial of murder, a State's witness and his wife had testified at a former trial and had since then moved out of the State, there was no error in admitting in evidence such testimony given at the former trial, after laying proper predicate. Following Robertson v. State, 63 Texas Crim. Rep., 216.

**6.—Same—Evidence—Tracks.**

Where, upon trial of murder, the State's witnesses testified that they had experience in trailing men, etc., there was no error to permit them to testify that they trailed the tracks of two men from a point near where the homicide was committed to a given point, etc.

**7.—Same—Evidence—Gun Shells.**

Upon trial of murder, there was no error in admitting in evidence certain gun shells which corresponded to the size which were used in killing deceased, and which were found near the scene of the homicide.

**8.—Challenge for Cause—Conscientious Scruples.**

Upon trial of murder, there was no error in permitting the State to challenge for cause certain jurors who said they had conscientious scruples in inflicting the death penalty; besides defendant's challenges had not been exhausted and it is not claimed any objectionable juror was forced upon him.

**9.—Same—Charge of Court.**

Where the charge of the court was framed in accordance with the opinion of this court in the former appeals, there was no error.

Appeal from the District Court of Eastland. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*J. R. Stubblefield,* for appellant.—On the question of the agreement between the State and witness and the charge of court thereon: Ex parte Greenhaw, 41 Texas Crim. Rep., 278; Carlisle v. State, 56 S. W. Rep., 365; Irish v. State, 25 S. W. Rep., 633.

On question of the court's charge on accomplice testimony: Bond v. State, 23 Texas Crim. Rep., 181; Smith v. State, 24 id., 299; Nalley v. State, 30 id., 458.

On question of the court's ruling in permitting the accomplice to testify as to subsequent acts: Couch v. State, 126 S. W. Rep., 866; McKinzie v. State, 32 Texas Crim. Rep., 568; Pryor v. State, 40 id., 645; Dawson v. State, 38 id., 13, s. c. id., 57; Low v. State, 65 S. W. Rep., 401; Richardson v. State, 92 S. W. Rep., 653; 12 Cyc., 423.

On question of reproducing testimony of absent witnesses: Hardin v. State, 123 S. W. Rep., 614; Ripley v. State, 126 S. W. Rep., 588.

On the question of the insufficiency of the evidence: Hill v. State, 55 Texas Crim. Rep., 435; Mann v. State, 44 Texas, 643; Nash v. State, 134 S. W. Rep., 716; Crowell v. State, 24 Texas Crim. App., 410; Franklin v. State, 63 Texas Crim. Rep., 388.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—This is the second appeal in this case, the opinion in the former appeal being found in 60 Texas Crim. Rep., 358, 132 S. W. Rep., 350. When tried again the jury again returned a verdict of murder in the first degree, assessing his punishment this time at imprisonment in the penitentiary for life.

Bert Carter testified that deceased Oats spent the night with appellant, and the next day appellant says deceased was at a tank on Jim Williams' place making coffee; that appellant was there with deceased when he went to where they were; that shortly after noon deceased got in his buggy and drove off, when appellant stated to witness Carter he thought deceased was a detective, and suggested that they follow him. That both of them did trail him all that evening, detailing the way they traveled. About sundown deceased went in the home of Mr. Cozort, when appellant stated deceased would doubtless spend the night there, and proposed to witness that they go home and return next morning and kill deceased; that deceased had told him (appellant) he was going to buy a restaurant at Strawn, and he knew he had money. Witness says he objected, when appellant insisted, saying he would do the work and divide the money; that next morning they did return, trailed deceased, telling the way they traveled. That finally they stopped and appellant got in a tree top and told him to look and see if deceased was coming. He informed appellant that deceased was coming down the road, and as deceased got about even with an opening in the tree top appellant fired, then jumped the fence, and took his money off of him. Witness says he and appellant then returned to their homes, detailing the way they went, saying when they parted, that he would come and they would go to Carbon together, and they did go there together that afternoon.

1. Appellant objected to the witness being permitted to detail what took place between appellant and the witness the evening before up to the time witness says appellant suggested to him to return next morning and kill deceased, and objected to witness being permitted to state what he and appellant did and agreed to do after the money was divided. He also objected to witnesses being permitted to state that they saw two men the evening before at the times and places detailed by Carter, and one witness stating that he recognized one of them as appellant Grant, and objected to witness Everett being permitted to state that he looked well at the men when he saw them passing, and

while he had never seen Grant before, yet he subsequently had appellant pointed out to him, and from his built, complexion, etc., he thought appellant was one of the men who passed him and others on the road that Carter said they went. All this testimony, we think, was clearly admissible. It does not come within the rule prohibiting acts and declarations of conspirators from being admitted, when said or done in the absence of the other. The court permitted the witness to tell nothing but what he and appellant jointly did. If both men had been on trial, a third person, if he had seen these men making these maneuvers, would have been permitted to testify to all these facts to show they were acting together, and that one of the actors is detailing the matter does not alter the rule. And as the witness Carter, under his testimony, was an accomplice, his testimony had to be corroborated, and it was not error to permit witnesses to state that they saw two men traveling along the road and across the fields that Carter said they traveled; nor to permit a portion of them to say they recognized appellant Grant, nor for others who did not know Grant to testify that when they had Grant pointed out to them, that from his built, height, complexion, etc., they were of the opinion that he was one of the men passing along with a gun. Mr. Chamberlain in his Modern Law of Evidence, sections 48 and 49, treats of the character of testimony given by Carter at length, and holds it admissible and necessary to throw light upon the entire transaction and enable the jury to give to it its due weight. And if the testimony of Carter is admissible, then there can be no question that testimony corroborative of the facts stated by him would also be admissible, as he, in law, under his evidence, was an accomplice or coprincipal, and his testimony had of necessity to be corroborated in a way tending to connect the defendant with the offense committed, and for this reason, when Mrs. Cozort testifies that at the time deceased came into their house she saw two men standing where Carter says he and defendant were when he says the agreement to kill deceased was formed, and the testimony of the witness Bob Jennings is admissible when he says he saw appellant and another man pass through his farm, and that they had guns and fired them at the time and place Carter says he and appellant passed along with guns and fired them; and the testimony of the witness Everett was admissible when he says he saw two men near to and going in the direction of where deceased was killed, armed with a gun, and that while he did not at that time know appellant, yet he had met him shortly thereafter, and one of the men he saw passing was of similar height, their make-up the same, and their complexion was alike, and that he thought he was the same man. Other testimony similar to this all corroborative of the testimony of the witness Carter was admissible, and these bills present no error.

2. On the question of accomplice the court charged the jury in terms exactly in accord with the opinion of this court in the case of Campbell v. State, 57 Texas Crim. Rep., 302, and approved in Brown

v. State, 57 Texas Crim. Rep., 570; King v. State, 57 Texas Crim. Rep., 363, and other cases handed down since those opinions were rendered. And the court having thus charged the jury, there was no error in refusing the special charges relating to accomplice testimony. When the accomplice Carter took the witness stand the court told him in the presence of the jury: "I want to state to you Mr. Carter that under the law if you give, evidence that will, in any manner incriminate yourself—you don't have to make any statement at all, unless you want to; if you make any statement at all on this stand, it must be voluntary on your part, and I also want to warn you that any statement you make might hereafter be used against you and not for you." Appellant objected to these remarks being made to the witness because it was calculated to lend additional weight to the testimony, and the State had made a contract with the witness not to prosecute him but to dismiss his case in consideration of him testifying in this case. On cross-examination the appellant proved that the witness had a written contract signed by the district attorney, and approved by the court and introduced the contract in evidence. The court then instructed the jury: "At the request of defendant I instruct you that where the State makes an agreement with a party to testify, or what is known as to turn State's evidence, if that party carries out the agreement faithfully, and states the truth of the transaction, why the State would be bound by that agreement and could not prosecute a party thereafter. The defendant asked me to instruct you, and I do it at his request. If Carter lives up to his agreement with the State to testify in this case, he will not be prosecuted." The court states he gave the witness the warning so that if he did not live up to his agreement with the State, and the State decided to prosecute him, the testimony given could be used against the witness. When the court gave the instructions requested by appellant, certainly the remarks to the witness could not have resulted in any harm to appellant. The jury were made fully aware under what conditions he was testifying, and it all could but go to impair instead of strengthen his testimony with the jury.

3. It also appears by bills of exception that while this witness was testifying, the appellant was permitted to prove that he had been indicted of offenses of the grade of felony, when the appellant's attorney asked the witness, "Bert, what other offenses have you been charged with?" which was objected to and the objection sustained, the court instructing appellant's counsel that he could inquire as to any offense of the grade of felony or involving moral turpitude, but no others. At once appellant's counsel asked the witness, "With what offenses have you been indicted," which was objected to and sustained, when the court instructed the attorney that he knew the rule of the court and the rule of law, and he must not again ask such questions, when appellant's counsel asked the witness: "Is it not a fact that you took some money off of Fieldon Brown when he was drunk?" It developed that the witness had never been charged in any court with such an

offense, and the court again instructed appellant's counsel not to ask questions in regard to offenses except in those instances where he had been charged with an offense in the courts involving moral turpitude or of the grade of felony. Counsel ignored the instructions of the court and repeated similar questions to witnesses a number of times, when he was fined by the court and required to pay the fine. It appears from the record that the witness Carter had not been indicted in regard to any of the matters inquired about, and no complaint filed against him. In the case of Ware v. State, 36 Texas Crim. Rep., 599, and Barkman v. State, 41 Texas Crim. Rep., 105, it was held: "The witness never having been indicted or under legal accusation for said offenses, it was not competent evidence to impeach him." For a full discussion of this question and a citation of authorities see Wright v. State, 63 Texas Crim. Rep., 429, 140 S. W. Rep., 1105. The testimony was not admissible, and the court did not err in excluding it, and counsel for appellant, after the question had been ruled on by the court, should have shown some respect for the ruling of the court. If the court had been in error, he could have reserved his bills of exception, but under no conditions was he authorized to ignore the ruling of the trial court. Having, by contemptuously ignoring the ruling of the court, brought about conditions which resulted in fines being imposed, he will not be heard to complain.

4. Levy Cozort and his wife were in attendance on court at the former trial in this case and testified. Since then they have moved to Oklahoma. The State introduced their testimony at the former trial after properly proving it up. In this there was no error. Robertson v. State, 63 Texas Crim. Rep., 216, 142 S. W. Rep., 533.

5. While the witnesses Deens and Johnson were on the witness stand they testified that they trailed the tracks of the two men from a point near where the homicide was committed to a given point, and testified that they could tell the difference between tracks made by a person walking and one running, in that the tracks of the one running would be further apart, and when running the toe of the shoe cuts deeper, etc. These witnesses testified they had had experience in trailing men, and know this fact by observation and experience. The testimony was properly admitted.

6. A Winchester Nublack No. 12 shell was picked up in the tree top near the scene of the homicide, and at the point where Carter says appellant was standing when the fatal shot was fired. A witness testified as to the number of shot in a No. 12 shell of the size found in deceased's body. This testimony was admissible in connection with other circumstances in this case.

7. Nine bills of exception are reserved to the action of the court in sustaining challenges to jurors. The jurors answered they had conscientious scruples and would not impose the death penalty on circumstantial evidence. The court did not err in sustaining the challenge for cause to these jurors. But if he had, it is shown by the record

that when the jury was obtained, appellant still had seven unexhausted challenges, and it is not claimed any objectionable juror was forced on him.  Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299, and cases there cited.

8.  The charge of the court is framed in accordance with the opin·ion of this court in the former appeal in this case, and aptly presents the law as applicable to the evidence.  The other matters complained of present no error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 19, 1912.—Reporter.]