E. E. SAPP v. THE STATE.

No. 5128. Decided November 9, 1919.

Rehearing denied June 25, 1920.

1.—Murder—Change of Venue—Practice on Appeal.

Where the judge in the county of the prosecution changed the venue of a murder case on his own motion to a county of another district, with the consent of defendant, on account that a trial alike fair to the State and the defendant could not be had in the county where the indictment was found, and defendant did not reserve a bill of exceptions as authorized under Article 634, C. C. P., at the time the order of change of venue was made, but made a plea to the jurisdiction in the county to which the venue was changed, there was no error in overruling said plea and motion.

2.—Same—Continuance—Practice on Appeal.

A motion for continuance was correctly refused on the ground that defendant's application for bail was pending in the Court of Criminal Appeals, or on account of the absence of his counsel, other able counsel representing him.

3.—Same—Severance—Continuance—Practice on Appeal.

The trial court did not err in overruling the application for severance asking that the codefendant be placed upon trial first, where the cases were pending in separate counties and the severence asked for would have amounted to a continuance of the case. Following Price v. State, 68 Texas Crim. Rep., 556, and other cases.

4.—Same—Jury and Jury Law—Challenge for Cause—Conscientious Scruples.

There was no error in allowing the State to challenge jurors for cause who stated under *voir dire* that they had conscientious scruples against inflicting the death penalty as punishment in a case depending on circumstantial evidence. Following Shafer v. State, 7 Texas Crim. App., 239, and other cases.

5.—Same—Eyewitness—Circumstantial Evidence.

That there was an eyewitness to the actual homicide would not necessarily remove the case from the domain of circumstantial evidence. nor would the statement of the man who actually fired the fatal shot, to the effect that the defendant hired him to do so, take the case out of the rule of such evidence. Following Bloch v. State, 81 Texas Crim. Rep., 1.

**6.—Same—Jury and Jury Law—Opinion of Juror.**

Objection to a particular juror who stated that he had formed an opinion by mere reading of newspapers, etc., and such that would not influence him in arriving at a verdict in the case, was correctly overruled.

**7.—Same—Evidence—Conspiracy—Declarations of Co-conspirators.**

Where the indictment alleged that defendant acted as an accomplice in the murder of his wife, and only the name of one co-conspirator is mentioned in the indictment as principal, but the State claimed a conspiracy between all the parties, which was to kill the deceased to get her money, the statements of the principals and co-conspirators pending the conspiracy was admissible in evidence, and such conspiracy continued until the main object thereof was obtained, which was to get the property of the deceased and which, therefore, did not cease until the will of the deceased was probated. Following Gracy v. State, 57 Texas Crim. Rep., 68, and other cases; also, Cox v. State, 8 Texas Crim. App., 303. Davidson, Presiding Judge, and Morrow, Judge, Concurring, qualifiedly.

**8.—Same—Confessions of Principals—Conspirators—Rule Stated.**

The confessions of a principal are admissible in evidence on the trial of an accomplice or accessory to evidence the commission of a crime by the principal, and when several persons are proved to have combined for the same unlawful purpose, any act done by one of the party in pursuance of the concerted plan with reference to the crime charged is the act of all., and proof of such act is evidence against one and all the others. Following Cox v. State, supra, and other cases.

**9.—Same—Order of Evidence—Conspiracy—Rule Stated—Co-conspirators.**

The rule that the conspiracy must be established before declarations of co-conspirators are admissible against the accused no longer obtains in this State, nor does the order in which evidence to show the conspiracy is admitted affect its admissibility. Following Nelson v. State, 43 Texas Crim. Rep., 563, and other cases. And the declarations of both the conspirators, the one who was not named in the indictment and the one who was, were admissible in evidence. Davidson, Presiding Judge, and Morrow, Judge, assenting qualifiedly.

**10.—Same—Evidence—Principals—Accomplice.**

Where, defendant was charged as accomplice in the murder of his wife, not being actually present, when the killing took place, and this being alleged in the indictment, it devolved upon the State to prove the guilt of the principals as a part of its case against defendant, and under this rule the declarations of the principals were admissible in evidence. Following Simms v. State, 10 Texas Crim. App., 131, and other cases; besides, there was no objections to such testimony at the time of its introduction, to have such testimony limited to the principals and there was no reversible error.

**11.—Same—Evidence—Motive—Co-conspirators—Circumstantial Evidence.**

Where upon trial of murder charging defendant as an accomplice, where the evidence showed that two of the conspirators were eye-witnesses to the killing, one being named in the indictment, it was proper to permit the State to show, if possible, that defendant attempted to destroy their evidence by killing them, and to introduce testimony that sometime after the murder these co-conspirators declared defendant's guilty connection with the killing, and that shortly thereafter their dead bodies were found with indisputable evidence that they had been murdered.

12.—Same—Evidence—Declarations of Third Party—System—Other Transactions.

Upon trial of murder of defendant as an accomplice, there was no error in admitting evidence to the effect that the defendant and another had tried to induce the witness, some time prior to the marriage of defendant and deceased, to marry a wealthy old woman, obtain her property, thereafter dispose of her and divide her property between them, as this bore on the plan pursued in the instant case.

13.—Same—Evidence—Domestic Relations—Husband and Wife—Motive.

Where defendant was indicted for the murder of his wife, as an accomplice, there was no error in admitting testimony as to the acts and conversations between defendant and his wife, showing the lack of affection on the part of defendant for his wife, his attitude toward her, both before and after their marriage, his neglect of her, his attentions to other women, and his desire to get possession of her property, to show motive for the killing.

14.—Same—Witness—Reputation for Chastity.

Where efforts were made to impeach witnesses for the State by proving their bad reputation for chastity, the court correctly overruled this attempt to attack the credibility of said witnesses.

15.—Same—Evidence—Declarations of Co-conspirator—Rule Stated.

Where it was claimed by the State that the brother of the defendant made himself a party to the conspiracy of killing the witnesses who had killed the wife of the defendant, there was no error in admitting in evidence the acts and declarations of said brother; although he had entered the conspiracy at a latter stage of the same.

16.—Same—Charge of Court—Circumstantial Evidence—Accomplices—Requested Charges.

Where, upon trial of murder, defendant being charged as an accomplice, the evidence was circumstantial, and the trial court fairly submitted the law thereon, and the law upon accomplices, etc., there was no error in refusing special requested charges on the same subject.

17.—Same—Sufficiency of the Evidence—Accomplice.

Where the defendant was indicted as an accomplice to the murder of his wife and his punishment assessed at ninety-nine years in the penitentiary, and the record on appeal showed that the conviction was sustained under a proper charge of the court, there was no reversible error.

18.—Same—Rehearing—Declarations of Principals—Evidence.

Where it was urged, on motion for rehearing, that this court committed error in holding, as admissible, the statement of a co-conspirator and principal in the offense who had not been named in the indictment, and who was contending not to be a party to the conspiracy to kill the deceased, held, that it is not necessary, in order to make admissible evidence, that one was a co-conspirator to show that he was indicted as such. Following Bass v. State, 59 Texas Crim. Rep., 191, and other cases; besides, the uncontroverted testimony showed that at the time deceased was killed by the principal named in the indictment, the other, who was not named therein, was a few feet distant, and his statement, therefore, made some time after the killing, to the effect that he had hired a man, who was the other principal, to kill the deceased, was admissible in evidence. Davidson, Presiding Judge, and Morrow, Judge, qualifiedly concurring.

19—Same—Acts and Declarations of Co-conspirators—Motive.

The co-conspirator who was not named in the indictment, but who was shown to have been a party to the conspiracy bringing about the death of the deceased, and who was present at the homicide, and whose subsequent declarations against the defendant made his removal most material to the defendant, was a fact admissible in evidence upon the trial of the defendant for murder of his wife, as an accomplice. Davidson, Presiding Judge, and Morrow, Judge, qualifiedly concurring.

20.—Same—Declarations of Defendant—Motive.

Upon trial of defendant as an accomplice for the murder of his wife, there was no error in introducing the conversation had between the witness on one side, and the defendant and another on the other, some time prior to the marriage of defendant and deceased; the proof further showing that some time during the following year defendant got a divorce from his wife, and a few months thereafter married the deceased, who was an old, wealthy woman; appellant being a young man, and that very soon thereafter he came into possession of large sums of money from deceased, etc.

21.—Same—Disqualification of Juror—Opinion of Juror.

Where the juror read about the proceedings of another trial against the defendant for the murder of one of his co-conspirators and had an opinion therefrom, but upon direct examination stated positively that while he had such an opinion it was not such as would influence his action as a juror, and that he could try the case upon the law and the evidence just as fairly and impartially as he could if he had never heard of it, there was no reversible error.

22.—Same—Evidence—Domestic Relations—Bill of Exceptions—Presumption.

Where appellant on rehearing again objected to the admission of testimony on the trial as to the domestic relations between defendant and the deceased, but the bill of exceptions disclosed that the testimony was material, and there was nothing to show whether defendant was present or not at the time the statements were made, the presumption must be in favor of the correctness of the ruling of the court, and there was no reversible error.

23.—Same—Bill of Exceptions—Practice on Appeal.

Where a blanket exception was made to the testimony of witnesses as to the domestic relations between the defendant and his wife, generally urging that said testimony was prejudicial, etc., such exception will not suffice to bring any matter up for review, it being disclosed by said bill that a great part of the testimony set out therein was material and admissible in evidence.

24.—Same—Principal Not Named in Indictment—Declaration—Rehearing—Motive.

The admissibility of the declarations of Havard, the principal who was not named in the indictment, is upheld upon the proposition that his death was brought about by the defendant, and that it was material to the State to show that Havard had made declarations which would furnish a motive for the defendant to destroy him in order to avoid the disclosure by him of defendant's connection with the murder of his wife.

Appeal from the District Court of Brazos. Tried below before the Honorable H. S. Morehead.

87 Tex.—39

Appeal from a conviction of murder as an accomplice; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*V. B. Hudson, F. J. Duff* and *C. W. Howth,* for appellant.—On question of admitting in evidence the statement of co-conspirator and principal who was not named in the indictment: Wallace v. State, 46 Texas Crim. Rep., 346; Choice v. State, 52 Texas id., 287; Reagan v. State, 49 id., 444; Dungan v. State, 39 id., 117; Dawson v. State, 38 id., 12; Bookser v. State, 26 Texas Crim. App., 596; Ricks v. State, 19 id., 317; Knight v. State, 7 id., 209.

On question of change of venue: Taylor v. State, 197 S. W. Rep., 197.

On question of severance: Terry v. State, 76 S. W. Rep., 928.

On question of direct and circumstantial evidence: Wampler v. State, 28 Texas Crim. App., 353; Kidwell v. State, 35 id., 267; McKinney v. State, 48 id., 402; Tune v. State, 49 id., 448. Perry v. State, 155 S. W. Rep., 263; Strickland v. State, 161 id., 110; Johnson v. State, 162 id., 512; Hunnicutt v. State, 18 Texas Crim. App., 522.

On question of conscientious scruples to inflict penalty of death: Wade v. State, 12 Texas Crim. App., 358; Monk v. State, 27 id., 457.

On question of opinion of juror: Maines v. State, 35 Texas Crim. Rep., 113; Keaton v. State, 40 Texas Crim. Rep., 145; Gallagher v. State, 40 id., 307.

On question of declarations of third party as to defendant's proposition to marry an old woman, etc.: Davis v. State, 143 S. W. Rep., 1161; Gardner v. State, 55 Texas Crim. Rep., 394; Woodworth v. State, 42 id., 204; Maclin v. State, 144 S. W. Rep., 959.

On question of declaration of deceased and others as to domestic relations, etc.: Maclin v. State, 144 S. W. Rep., 959; Walker v. State, 140 id., 455.

On question of hearsay: Wallace v. State, 46 Texas Crim. Rep., 346.

On question of charge of court; on declarations of co-conspirator: Jackson v. State, 90 S. W. Rep., 35.

*T. B. Hendricks,* Assistant Attorney General, for the State. Cited cases in opinion.

LATTIMORE, JUDGE.—This appellant was convicted of the murder of his wife in the District Court of Brazos County, Texas, and given a punishment of ninety-nine years in the penitentiary. Those of the errors therein which are deemed of sufficient importance to discuss, as well as the evidence in the case, will appear in the opinion.

The case originated in Liberty County, Texas, but was transferred of the court's own motion to the District Court of Brazos County,

and when there called for trial, a plea to the jurisdiction was presented and overruled; which constitutes the first error presented. The order changing the venue of the case to Brazos County recites that it was made of the court's own motion, with the consent of the appellant, on account of the great publicity given the case, and the prejudice existing in Liberty County and each of the counties of that and adjoining districts, against the appellant.

Brazos County, to which the case was transferred, was not in the same nor in an adjoining district to Liberty County, which facts form the basis of appellant's plea to the jurisdiction, as stated. Said plea did not controvert the publicity or prejudice stated in the order of the court as reasons for the removal of the case to Liberty County, but did controvert by affidavits and evidence that such order was made with the consent of the appellant. After hearing said plea, and the evidence offered thereon, the court made the following order: "And it further appearing to the Court that because of the notoriety given the evidence in said cause and the publication thereof in the various newspapers circulating in this, and the adjoining districts, the said cause numbered 2858 was heretofore on the Court's own motion and with the consent of the defendant, by order entered on the minutes of this Court on the 5th day of December, 1916, transferred to the District Court of Brazos County, Texas, wherein said cause is now pending.

And the Judge presiding herein, being satisfied that because of the facts hereinabove stated, to wit: The great publicity given the evidence and facts of this case, a trial alike fair and impartial to the accused and the State cannot be had in this, Liberty County, and because of the great prejudice which exists in this County, as well as in the other counties of this, and the adjoining districts to this 75th Judicial District, he, the said Judge, of his own motion, now here orders that the venue of this case be changed to Brazos County, Texas, it is therefore considered, ordered, adjudged and decreed by the Court that the venue of this cause, be, and it is hereby changed from this, Liberty County, to be tried in the District Court of Brazos County, Texas, the same being one of the Counties in the 20th Judicial District of the State of Texas, and that being the nearest and most convenient County to Liberty County in which a fair and impartial trial of this cause may be had."

Without going into details in discussing the laws and constitutional provisions involved, we will observe that a trial by a fair and impartial jury is guaranteed by our Constitution, and that each and all of the laws enacted by the Legislature have in view the attainment of the object and purpose of giving to the accused a fair trial before an impartial jury as guaranteed.

Our statutes provide substantially that if it be shown in an application for a change of venue *or otherwise,* that all the counties adjoining that in which the trial is pending, are subject to some valid

objection, the case may be removed to such county as the court may think proper. Art. 632, C. C. P. The finding of the court, as outlined in his order changing the venue of his own motion, is presumed to speak the truth, and will not be revised on appeal, unless it be affirmatively shown that appellant was materially injured by such change of venue. (Cox v. State, 8 Crim. App., 283; Frizzell v. State, 30 Crim., App., 42; McCoy v. State, 27 Texas Crim. App., 417; Thurman v. State, 27 Texas Crim. App., 347.) Art. 634, C. C. P., expressly provides that the action of the trial court granting change of venue will not be revised unless the facts showing such objection be stated in a bill of exceptions filed at the time, which was not done in this case.

Each of the cases cited by appellant in support of his contention in regard to this matter is decided on a question foreign to this issue and is not in point.

Appellant's motion for continuance was properly overrule,—The fact that the Court of Criminal Appeals had not acted on his application for bail in the instant case, was not sufficient ground for continuance. Ex parte Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. R., 752.

Nor was the absence of one of appellant's counsel sufficient ground for the granting of a continuance. Other and able counsel were present at the beginning of the trial, and the rights of appellant were fully and fairly protected.

The trial court did not err in overruling the application for severance, asking that Lou Sapp, the brother of appellant, be first tried. The cases were pending in separate counties, and in different jurisdictions, and to have granted the severance asked for would have amounted to a continuance of the instant case, which is expressly forbidden by our statutes. Art. 727, C. C. P.; Price v. State, 68 Texas Crim. Rep., 556, 152 S. W. R., 640; Locklin v. State, 75 S. W. R., 305. The case cited as authority by appellant was one in which both cases were pending in the same jurisdiction, and is otherwise not in point. All the authorities seem to hold that no error was committed in allowing the State to challenge jurors for cause who stated on their *voir dire* that they had conscientious scruples against inflicting the death penalty as punishment in cases depending on circumstantial evidence. Shafer v. State, 7 Texas Crim. App., 239; Little v. State, 39 Texas Crim. Rep., 654, 48 S. W. R., 984; Grant v. State, 67 Texas Crim. Rep., 155, 148 S. W. R., 760; Clanton v. State, 13 Texas Crim. App., 152.

That there was an eyewitness to the actual homicide would not necessarily remove the case from the domain of circumstantial evidence. Appellant was not present at the time of the killing and his guilty connection therewith was more an issue in the case than the fact of death. Nor would the statement of the man who actually fired the fatal shot, to the effect that the appellant hired him so to do, take

the case out of the rule of such evidence. Mr. Branch, in his Criminal Laws of Texas, p. 106, cites authorities supporting this position. See also Block v. State, 81 Texas Crim. Rep., 1, 193 S. W. R., 303.

Objection to a particular juror, who stated that he had formed an opinion, is disclosed here by some of appellant's bills of exception. On similar complaints, it has been repeatedly held by this Court that such juror is competent if his opinion be formed by mere reading, etc., or if it appears to the court that such an opinion will not influence him in arriving at a verdict in the case. See Vernon's C. C. P., p. 377, and authorities cited.

What we have said above disposes of appellant's contentions with regard to matters preliminary to the introduction of evidence.

Mrs. Ellen Sapp, the wife of appellant, was shot and killed on November 7, 1914, the shot being from a gun in the hands of one Dick Watts, and the same was claimed at the time to be accidental. The occurrence took place at a hunting camp, and the persons present were Mrs. Sapp (deceased), Mrs. Taylor, Dick Watts, Frank Havard, and H. Sowell. Appellant was not present, but was not far away, and arrived on the scene a few minutes after the fatal shot. It was shown that of the persons present at the time of the death of Mrs. Sapp, Sowell was the only one living at the time of the trial. Nothing appears as to the cause of the death of Mrs. Taylor, but the State claimed on the trial of the case that both Watts and Havard had been murdered by appellant and evidence tending to so show was admitted against the appellant, as was likewise evidence tending to show that appellant had been searching for the witness Sowell while he, appellant, was armed.

The indictment and conviction of appellant was as an accomplice to the murder of his wife, it being alleged in the indictment that Dick Watts was the principal offender. No mention was made in the indictment of Frank Havard. The State's theory was that a conspiracy existed between appellant and others, having for its principal object, the getting of the money and property of the deceased; that Watts and Havard were parties to the enterprise, their participation being mainly for the purpose of bringing about the death of Mrs. Sapp after she had given to her husband large sums of money and had made a will in his favor. The killing of deceased being merely one of the steps necessary to obtain the property, in this opinion it will be taken for granted that if there was such a conspiracy having such an object, it had not been consummated at the time of the homicide. The will of deceased making appellant the principal beneficiary was filed by appellant for probate shortly after the death of his wife, and was contested by her relatives. On this trial statements made by both Watts and Havard, subsequent to the death of Mrs. Sapp, were admitted in evidence. The statement of Watts was in substance that he killed Mrs. Sapp, and was hired so to do by appellant; that of Havard was in substance that appellant tried to get him to kill Mrs.

Sapp; that he turned the job down, but got a man, to-wit, Dick Watts, for the appellant. As stated above, in view of the fact that the money and property had not yet been obtained by the appellant under the law, we will not take time to discuss the proposition, but consider it as settled by the holdings of this Court that the declarations of Havard and Watts, if in fact they were co-conspirators with appellant, were made during the pendency of the conspiracy, the main object of which had not been consummated at the time such statements were made.

It is fundamental that if Watts killed Mrs. Sapp in violation of law, he would be a principal offender, and likewise, if Havard procured Watts to do this killing, for Sapp, and was personally present when the killing took place, he too, under our law, would be a principal therein. See Art. 78, Vernon's Penal Code. We think the evidence as to these statements of Watts and Havard were admissible for several reasons.

If there was a conspiracy between the parties, it is obvious that the main object was to obtain the property of deceased, which object was only partially obtained by her death, there remaining, as stated above, yet to be accomplished by said conspiracy, the probating of her will, and the reduction to actual possession and ownership of her property, and in such case, so long as the parties to a conspiracy are still moving toward the accomplishment of any of its objects, the acts and declarations of one in pursuance of the common design, whether made in the presence and hearing of the others or not, becomes admissible against each of the others, even though tried separately. Gracy v. State; 57 Texas Crim. Rep., 68; Serrato v. State. 74 Texas Crim. Rep., 413, 171 S. W. R., 1133; O'Neal v. State, 14 Texas Crim. App., 582; Long v. State, 55 Texas Crim. Rep., 55; Kennedy v. State, 19 Texas Crim. App., 618; Nunez v. State, 70 Texas Crim. Rep., 481; Zweig v. State, 74 Texas Crim. Rep., 306, 171 S. W. R., 747; Cox v. State, 8 Texas Crim. App., 303|. We regard the opinion of Judge WHITE, in Cox's case, *supra,* one of the ablest and best considered among our decisions. In that case a witness testified that one claimed to be a co-conspirator by the State, out of the presence and hearing of defendant on trial, had said to witness:''

''Going back to Mr. Augustine's, Meador told me that they were going to kill the parties,—Humphreys, Theodore Brazell, and the two Ainsworth boys. He told me they were going on Monday night to do it. He told me this Friday evening. He told me the next Monday they were going to do the killing.'' To the question ''What was the expression of Meador?'' witness replied, ''He said 'We are going to kill them.' He said 'We are going to do it.' He did not say who was going with him. Meador told me that Augustine was going with him. He told me he was right in for it.'' Witness is satisfied that Cox did not hear this conversation. In another portion of his testimony the witness says that Meador told him that Cox was going with him

to do the killing. This is in substance a resume of the principal points in the evidence objected to.''

Discussing objections to the admission of this evidence, this Court quotes from Mr. Greenleaf, as follows:

''The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy in pursuance of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them. It makes no difference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed in law a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others, in furtherance of such common design.

The court also quotes in said opinion further from other decisions as follows:

''In The People v. Brotherton, 47 Cal., 388, it was held: 'Where two are jointly indicted, the prosecution may on the trial prove the declarations and acts of one done in the absence of the other, before proving the conspiracy between the defendants, provided proof of such conspiracy is afterwards made.''

''In the State v. Winner, 17 Kan., 298, it was held that ''ordinarily, when the acts and declarations of one co-conspirator are offered in evidence against another co-conspirator, the conspiracy itself should first be established *prima facie,* and to the satisfaction of the judge of the court trying the cause; but this cannot always be required. It cannot well be required where the proof depends upon a vast amount of circumstantial evidence—a vast number of isolated and independent facts. And in any case where such acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial, taken together, shows that such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before or after the introduction of such acts and declarations.''

''In the People v. Geiger, 49 Cal., 643, it was held that 'if two are jointly indicted for murder, and are tried separately, and on the trial of one there is testimony tending to show a conspiracy between them, the declarations of the one not on trial, made before the killing, may be received in evidence. And the conspiracy to commit a crime being proved on the separate trial of one of the conspirators, the jury are to give the same weight to the declarations of the co-conspirator not on trial as they would give them if made by the one on trial. See also People v. Cotto, 49 Cal., 166.''

After making these citations and others, this Court states its conclusion, as follows:

''To us it seems too plain to admit of argument, that, when two or more are found acting together with an unlawful intent in the commission of an offense, the common design and acting together

makes them *ipso facto* conspirators—endows them as a body with the attribute of individuality—merges the conspiracy to do the act in the act itself; and that the previous acts and declarations of each or any such principal offenders in pursuance of the agreed plan, and tending to throw light upon it or the motive or intent with which it was committed, is and should be received as legal and admissible evidence against each and all, whether indicted, prosecuted, and tried jointly or separately. 1 Bishop's Crim. Law, sec. 432; Kelley v. The people, 55 N. Y., 566; 2 Whart. on Ev., 1205; 47 Ind., 568.''

In the Kennedy case, *supra,* this Court held as follows:

''The fifteenth bill of exceptions was reserved by defendant to the court's permitting Jack Williams to testify, over the objection of defendant, to certain statements made to the witness by Iven Thompson (a codefendant, osme days before the killing, relative to the intentions of Thompson and appellant Kennedy to kill Edmund Hill— appellant Kennedy not being present when Thompson made these statements to the witness. The evidence was admissible. The witness stated that Thompson said ''that he and Tom Kennedy were going to kill Hill the first chance they got, and that they were going for him at any time.'' A conspiracy between the parties may not have been conclusively established on the trial, and this testimony tended to establish its existence at the time the statements and declarations were made.''

Mr. Wigmore on Evidence, page 1291, Sec. 1079, lays down the rule as follows:

''A conspiracy makes each conspirator liable under the criminal laws for the act of every other conspirator done in pursuance of the conspiracy. Consequently by the principle already exemplified in other relations (*Ante* Sec. 1077) the admissions of a co-conspirator may be used to affect the proof against the others on the same condition as his acts when used to create other legal liability.''

In the Section 1077 referred to, Mr. Wigmore states ''that the confession of a principal is admissible on the trial of an accessory to evidence the commission of the crime by the principal.''

Mr. Abbot on Evidence, p. 190, states the rule as follows: The familiar rule that when several persons are engaged together in the furtherance of an illegal design, the actions and declarations of one conspirator, made together in pursuance of a concerted plan, and with reference to the common object, are competent against the others though not made in their presence,'' and again the same author, on page 621, says: ''slight evidence of concert or collusion between the parties to an illegal transaction admits evidence of the acts and declarations of one against the others under the rule already stated on page 190.''

Mr. Wharton in his valuable work on Criminal Evidence, p. 1431. lays down the following proposition: ''When several person are proved to have combined for the same unlawful purpose, any act

done by one of the party, in pursuance of the concerted plan with reference to the crime charged, is the act of all; proof of such act is evidence against one and all the others.''

The rule that the conspiracy must be established before declarations of co-conspirators are admissible against appellant, no longer obtains in this State, nor does the order in which evidence to show the conspiracy is admitted, affect its admissibility. Nelson v. State, 43 Texas Crim. Rep., 553; Barber v. State, 69 S. W. Rep., 515; Segrest v. State, 57 S. W. Rep., 845.

The declarations of both Havard and Watts were in pursuance of a design common to them all, and were made while the objects of the conspiracy were not yet accomplished.

There is another rule, by reference to which this evidence would be held admissible. Appellant was charged as an accomplice, not being actually present when the killing took place. This being the form of the allegation in the indictment, it devolved upon the State to prove the guilt of the principal or principals as a part of its case against appellant. Sims v. State, 10 Texas Crim. App., 131; Bluman v. State, 33 Texas Crim. App., 43; Collins v. State, 24 Texas App., 141; Millner v. State, 75 Texas Crim. Rep., 22, 169 S. W. R., 899.

That Watts shot and killed Mrs. Sapp was not denied. That Havard was present at the time of such killing was also uncontroverted. The confessions of a principal in such a case are held admissible to prove his guilt. Crook v. State, 27 Texas Crim. App., 239; Hamlin v. State, 39 Texas Crim. Rep., 604; Thomas v. State, 43 Texas Crim. Rep., 23.

Such evidence being admissible for the purpose stated, it becomes the duty of appellant, under our practice, to object to its use as against him, if he so desires, and such objection must be properly raised and presented to the trial court and brought here by exception and bill in order to entitle it to our consideration. There was no such objection to this evidence. It is not claimed or admitted that such evidence could be used to incriminate the principals only, nor was any charge asked limiting such evidence to any such purpose, all of which must be done by appellant if he wishes such evidence limited for any purpose whatever.

Again: Watts and Harvard were eyewitnesses to the killing of Mrs. Sapp, and if they were or became witnesses against appellant for his alleged complicity in such killing, we think it proper to show, if possible, that appellant attempted to destroy their evidence and suppress their testimony by killing them.

It will be observed from the record that from the time of the killing of deceased on November 7, up to about Christmas of that year, both Watts and Havard appeared to be on terms of friendly intimacy with appellant; that about the latter time, Watts began to talk to different parties of his own and appellant's guilty connection with said

killing; and early in January he disappeared. The circumstances surrounding his disappearance were offered in evidence on this trial by the State, as showing that appellant and his brother were the guilty instruments in bringing about Watts' death. It also appears that Havard began to talk along the same line in January, and shortly thereafter he disappeared, as the State claims, as the result of the acts of the same agent or agents. Both these men's bodies were found buried in the big thicket, with indisputable evidence that they had been murdered.

We are inclined to believe that the State might prove hostile declarations toward appellant made by Havard and Watts under these circumstances. The case was one of circumstantial evidence. The deaths of said witnesses were offered as circumstances against the accused, and as tending to show the motive and reason for such killing might not the declarations of such witnesses, made shortly before their deaths, be admissible? That one is merely a witness against one accused of crime might supply a remote reason or a mighty motive for the killing of said witness, according as his testimony would hurt little or much; and as supplying a cogent reason for the removal of such evidence by the death of said witness, we think, in a proper case, the declarations of the deceased witness showing what his evidence would be, is provable against the accused. Watts and Havard were present at the killing, it is true, but for nearly two months thereafter their accounts of the same were, that it was accidental, which was favorable to the accused, and during these two months they remained unharmed and unmolested. They change their attitude, and each makes to several persons statements extremely damaging to appellant, to the effect that the killing was intentional, and that appellant was the prime mover in the whole matter. Almost immediately both of said parties are killed, slain, and their bodies are found buried near each other, under such circumstances as to make it reasonably appear that they were killed by the same party. What was the motive or reason for such killing? That they were merely witnesses to the killing It might be so asserted. Up to the time they began to talk, was there any reason for supposing that their witnessing was against appellant? Apparently not. But from the time their said statements were made their attitude became wholly different, and there arose apparent necessity for the suppression of their testimony and the removal of such witnesses to accomplish said purpose. It seems to us that in such case the statements of said parties were strong circumstances bearing upon the motive and purpose of the person by whom they were killed.

What we have said, disposes of the objections to the evidence of statements made by Watts and Havard, as testified to by a number of witnesses, and constitutes, in our opinion, a decision of the main point in this case.

The evidence of the witness Joe Moore, to the effect that appellant and one Van Auken tried to induce him some time prior to the marriage of appellant and deceased, to marry a wealthy old woman, obtain her property, and thereafter dispose of her in some way and divide her property between said Moore, Van Auken and appellant, was admissible for what it was worth in the minds of the jury, as evidence bearing on the question of the conspiracy.

The testimony of the friends—intimates of both appellant and deceased—as to acts and conversations showing the lack of affection on the part of appellant for his wife, his attitude toward her, both before and after their marriage, his neglect of her, his attentions to other women, his desire to get possession of her property—were all admissible as circumstances throwing light on the real purpose or motive of appellant throughout the entire affair. The testimony is too long to even substantially state the same, being presented here in a statement of facts of over eight hundred pages; but we have carefully read it all, and considered it in the light of appellant's numerous objections thereto. Most of the objections we do not deem worth mentioning, as they are repeated in lengthy bills of exception, many of them without citations of authorities, or reasons which appeal at all to us as being worthy of inserting in this opinion.

Effort was made to impeach certain witnesses for the State by proving their bad reputation for chastity. The court did not err in refusing to permit the appellant to so attack the credibility of said witnesses.

There was objection made to proof of acts and declarations of Lou Sapp, the brother of appellant, at the time the body of Dick Watts was discovered, and publication made of the facts attendant thereon, in newspapers. It was claimed by the State that Lou Sapp made himself a party to the conspiracy by assisting appellant in accomplishing the deaths of Watts and Havard. If this be true, under our decisions, one who enters a conspiracy at any stage of its progress, adopts all that has gone before, and makes himself a party thereto, and to what comes after, and his acts and declarations are admissible in evidence.

More than thirty special charges were asked by appellant, seven of which were given. We have examined the various refused charges, in the light of the facts and the charge as given, and do not believe there was any error in refusing any and all of them. The trial court fairly submitted the law of circumstantial evidence; told the jury substantially that Watts and Havard were accomplices, and gave the law governing such cases. He told the jury that they could not consider the statements of Havard and Watts against the appellant unless there was a conspiracy between the parties to kill the deceased; that there could be no guilt of appellant if Mrs. Sapp was accidentally killed, etc. We think the law was fairly presented to the jury, and the special charges correctly refused.

We have gone fully through the lengthy and exhaustive brief of appellant, setting up in more than one hundred assignments the matters contained in his various bills of exception. We think it is suffi· cient to say that we do not find any one of the matters complained of to show reversible error, and the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

June 25, 1920.

LATTIMORE, JUDGE.—Many grounds are urged by the able counsel who represent the appellant, as reasons for granting this motion for rehearing.

It is urged that we were in error in holding as admissible, the statement of Frank Havard to Griffin, the reason now given being that it was neither alleged in the indictment, nor shown by testimony that Havard was a party to the conspiracy to kill deceased. This court held in the Heard case, 9 Texas Crim. App., 23, and the Bass case, 59 Texas Crim. Rep., 191, that it was not necessary, in order to make admissible evidence that one was a co-conspirator, to show that he was indicted as such, and we think the holding correct. We think the evidence was admissible for various reasons. The case against appellant was circumstantial in character, the State's theory being that Havard and Watts were the actual perpetrators of the crime in which appellant was an accomplice. The uncontroverted testimony showed that at the time Mrs. Sapp was shot by Dick Watts, Havard was a few feet distant, and that he said nothing at the time, except to go on with his cooking operations. It was also shown that he was engaged in the same occupation when appellant appeared on the scene some two minutes after the shooting, and that when appellant came up on this occasion, he merely said, "My wife is dead," and asked no questiosn of either Watts, Havard, or any other person as to what had occurred, or how deceased came to be shot, or by whom. In the statement supposed to have been made by Havard, and which was testified to by the witness Griffin, occurs the following language: "He (meaning Havard) never told me that he told Sapp that he wouldn't kill her, but that he would get Dick Watts to kill her for him." As stated in the original opinion, if Havard did procure the services of Dick Watts to kill Mrs. Sapp, and aided and co-operated with appellant and Watts in the plans to kill her, and was actually present when she was killed, he would not only be a principal offender, under Article 78 of our Penal Code, whether or not he was aiding or assisting in the actual killing at the time, but he would also be a most material witness for or against appellant, and his death at the

hands of appellant would be an exceedingly strong circumstance against the latter. Without further discussion of the matter of con-spiracy, we are of opinion that the facts pertaining to the death of Havard were pertinent and material, and as a motive for the killing of such witness, it was material to show declarations by him hostile to appellant, or of a nature injurious to appellant. This, we think, would include the declaration in question.

We do not think we erred in holding the declarations of Havard admissible, nor do we think the evidence failed to support the propo-sition that he was a party to the conspiracy bringing about the death of the deceased, was present at the homicide, and his subsequent declarations, made his removal most material to appellant.

It is insisted that we erred in holding admissible the evidence of Joe Moore, as to the conversation had with appellant and Van Auken some time prior to the marriage of the appellant and deceased. We cannot agree with appellant that this testimony was too remote, and had no probative force. The conversation was in the latter part of 1912, and the proposition put to Moore by appellant and Van Auken, was that Van Auken would produce an old and wealthy woman, and Moore would marry her—and as suggested by appellant, she would no live long, and by either appellant or Van Auken—"they could knock out her light;" her money to be divided between the three parties to the conversation. Moore declined the proposition. The proof further showed that some time during the following year, ap-pellant got a divorce from his wife, and a few months thereafter married the deceased at the home of Van Auken, the deceased being an old and wealthy woman, and appellant a young man; and that very soon thereafter appellant came into possession of large sums of money from deceased, and that about the same time, Van Auken deposited also considerable sums of money. It was shown by testimony that about the time appellant brought suit against his wife for divorce, or during that fall, that he stated to parties that he was going to marry deceased, and to a witness with whom he had a conversation about this time, who told him that deceased had had considerable trouble with her former husbands, appellant stated that if he got her she would never have trouble with another one.

The record discloses heartless and jeering remarks made by ap-pellant towards the unfortunate woman before and after his marriage to her, and up to the time she was killed, and in this connection we observe that the court charged the jury, at the request of appellant, that unless they believed beyond a reasonable doubt that that conver-sation testified to by the witness Moore, referred to a particular woman, they should disregard the same. We find nothing in that part of Mr. Branch's Annotated Penal Code, referred to by appellant, which would exclude this evidence.

It is again urged that the juror Stevens was disqualified by reason of having read some of the evidence of a companion case, and having

formed an opinion. An examination of this bill of exceptions discloses that said witness stated on his voir dire that he had read "most everything" pertaining to the trial of appellant at Lufkin, for the murder of Dick Watts, and said bill further discloses that upon cross-examination by the skilful counsel, said juror was led to say that he had an opinion; but upon direct examination, both original and in rebuttal, the juror stated positively that while he had an opinion, it was not such as would influence his action, and that he could try the case upon the law and the evidence just as fairly and impartially as he could if he had never heard of it. This Court has often held in cases of this character, that jurors giving similar answers are competent. Vernon's C. C. P., p. 377-378.

It is again urged that the court erred in admitting the testimony of Mariah Hamilton, Essie Abbott, Mrs. Myers, Mrs. Scott, "and others," because hearsay, etc. Mariah Hamilton was cook for appellant and deceased. A part of her testimony, as disclosed by the bill of exceptions, was to material facts, and there is nothing in said testimony of said witness, as contained in said bill, which shows whether appellant was present or not at the time the statements of Mrs. Sapp, testified to, were made, and our presumption must be in favor of the correctness of the ruling of the trial court.

Mrs. Myers testified that she boarded at the same place as appellant and deceased, and that Mrs. Sapp usually ate her meals alone, and that she seldom saw them take a meal together. Her evidence was entirely competent, and no element of hearsay appears therein.

Much of Mrs. Scott's testimony was pertinent and admissible. The bill of exceptions taken thereto fails to show that any objections were made thereto as being hearsay. There is nothing in the statement of said witness, as set out in said bill of exceptions, which discloses that the statements were made out of the presence of the appellant. The same is true of the bill of exceptions reserved to the testimony of Mrs. Essie Abbott. A blanket objection seems to have been made to the testimony of these witnesses, urging generally, that said evidence was prejudicial, of no probative force, hearsay, etc. When a bill of exceptions discloses that a great part of the testimony set out is material, and the same contains pertinent evidence, such a bill of exceptions will not suffice to bring before us any matter for review.

This disposes of the objections urged in this motion for a rehearing, and not being able to agree with any of the contentions made by appellant, his motion is overruled.

*Overruled.*

ON REHEARING,

June 25, 1920.

MORROW, JUDGE.—My understanding of the attached opinion on motion for rehearing is that the admissibility of the declarations of Havard is upheld upon the proposition that Havard's death was brought about by the appellant, and that it was material to the State to show that Havard had made declarations which would furnish a motive for the appellant to destroy him in order to avoid the disclosure by Havard of the appellant's connection with the murder of his wife. I do not wish to call in question the correctness of the view of my associate that upon the grounds stated, the case depending upon circumstantial evidence, the declarations mentioned were not properly received. In the original opinion, however, there appear some reasons given for receiving the testimony with which, as I comprehend them, I am not in full accord. The conditions under which the declaration of one co-conspirator becomes admissible against another are fairly and accurately stated, I think, in the case of Cox v. State, 8 Texas Crim. App., 256, and from the syllabus on the subject I quote: "If two or more act together, with unlawful intent, in the perpetration of a crime, they are co-conspirators and principal offenders by reason of their common design and co-operation, and, whether they be tried and indicted jointly or separately, the antecedent acts or declarations of each, pending and in pursuance of the common design, and tending to throw light upon its execution or upon the motive or intent of its perpetrators, are competent evidence against each and all of them." See also on the subject Encyc. of Law, vol. 8, p. 680-2; Willey v. State, 22 Texas Crim. App., 408; People v. Smith, 151 Cal., 626.

With the implication in the original opinion that the declaration of Harvard, treated as his confession, might be used against the appellant, I am not in full accord. Watts' declaration was admissible because the indictment alleged that Watts was the principal, and the appellant his accomplice. It was essential, therefore, that the State prove the guilt of Watts, and this it might prove by his confession. Crook v. State, 27 Texas Crim. App., 237. It was not essential that the State prove the guilt of Havard, and the reason for admitting in evidence the declaration of Watts does not obtain with reference to the declaration of Havard. Arnold v. State, 9 Texas Crim. App., 435; Poston v. State, 12 Texas Crim. App., 408.

Declarations of the deceased, showing her state of mind toward the appellant, were admissible. Wigmore on Evidence, vol. 1, sec. 102; Commonwealth v. Howard, 205 Mass., 128; Porter v. State, 86 Texas Crim. Rep., 23, 215 S. W. Rep., 311. The scope of such evidence would be limited to the purpose stated, and could not be

legitimately used as proof of the facts declared. If there was any transgression of the rule admitting such testimony, it was not of a degree to furnish ground for reversal of the judgment. See also Smith v. State, 92 Alabama, 30; Honeycutt v. State, 63 S. W. Rep., 639; Wharton's Crim. Evidence, vol. 2, p. 1738.

With these observations, I concur in the disposition made of the motion.

DAVIDSON, Presiding Judge.—I concur with Judge Morrow but do not deem it necessary to write.