## BILL ENGLISH v. THE STATE.

### No. 5751. Decided June 23, 1920.

**1.—Murder—Manslaughter—Former Ruling—Evidence.**

Where a former ruling of the trial court on the question of admitting evidence was upheld upon the former appeal to this court. the same becomes the law of the case unless it is shown to be clearly wrong and harmful. Following Lee v. State. 67 Texas Crim. Rep., 137, and other cases.

**2.—Same—Evidence—Declaration of Third Parties.**

Where, upon trial of murder and a conviction of manslaughter, the trial court admitted in evidence the declarations of the brother of the defendant to the effect that during the game of basket-ball he applied to the deceased an insulting epithet of which the defendant afterwards became aware, armed himself and in an altercation between his brother and deceased killed the latter, the same was admissible in evidence, although the defendant disclaimed knowledge thereof, the court submitting the proper charge thereon. Following Guffee v. State, 8 Texas Crim. App., 187.

**3.—Same—Continuance—Want of Diligence—Cumulative Testimony.**

Where, upon trial of murder and a conviction of manslaughter, there was a want of sufficient diligence to secure the absent witness, and the testimony of the absent witness was cumulative. there was no reversible error in overruling same Besides, the assignment on the subject in the motion for a new trial is not supported by the affidavit of the absent witness, and it was not probable that his testimony would change the result of the trial.

Appeal from the District Court of Hunt. Tried below before the Hon Wm. Pierson.

Appeal from the conviction of manslaughter; penalty: four years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard, J. A. Dial* and *O. C. Mulkey,* for appellant.—On question of declarations of third party: Mayhew v. State, 144 S. W. Rep., 231; Hickey v. State, 138 S. W. Rep., 1051; Wallace v. State, 145 id., 925; Lamb v. State, 146 id., 1169.

*Alvin M. Owsley,* Assistant Attorney General, and *Clarke & Sweeton,* for the State.—On question of continuance: Harvey v. State, 34 S. W. Rep., 623; Fulkerson v. State, 121 S. W. Rep., 111; Bearden

v. State, 83 id., 808; Dobbs v. State, 113 id., 921; Earley v. State, 103 id., 868; Powell v. State, 93 id., 544; English v. State, 213 id., 634.

MORROW, JUDGE.—The conviction is for manslaughter, and punishment fixed at confinement in the penitentiary for four years.

Complaint is made of the ruling of the court admitting in evidence testimony to the effect that during the game of basketball Henry English, a brother of appellant, applied to the deceased an insulting epithet. The same ruling was upheld upon the former appeal. English v. State, 85 Texas Crim. Rep., 450, 213 S. W. Rep., 634. The decision was not challenged upon motion for rehearing. It furnished the guide for the trial judge in the instant case. It becomes the law of the case, and unless clearly wrong and harmful its review upon this appeal is not admissible. Lee v. State, 67 Texas Crim. Rep., 137, 148 S. W. Rep., 712; Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W. Rep., 316; Manley v. State, 69 Texas Crim. Rep., 502, 154 S. W. Rep., 1008; Betts v. State, 71 Texas Crim. Rep., 204. In deference to the forceful and urgent manner in which the point is presented, we have re-examined the question. The offensive language was uttered during the progress of a game of basketball in which appellant and his brother, Henry English were participants and the deceased a spectator. Appellant was near enough to have heard the remark in the tone it was uttered, and whether he heard it was a question of fact. It is conceded that before leaving the grounds upon which the game was played appellant was told that the deceased had gone to arm himself, and warned against him. It was also conceded that there had been ill-feeling between Henry English and the deceased for some time, and that this was known to appellant. He also learned that his brother had used the insulting language towards the deceased. After the ball game he armed himself with a pistol. His brother was likewise armed, and while appellant disclaimed knowledge thereof, the circumstances were sufficient to support the contrary inference by the jury. The deceased, his father, and several brothers were residents of the village of Brashear, at which the game took place, the father being a merchant, and after the game deceased and his brothers went to the business portion of the town, and so did appellant and his brother, though they lived in a different community.

From the State's standpoint, the evidence discloses that while the parties were in the village the deceased called upon Henry English to retract the insulting language or fight. Henry English demurred upon the ground that he was outnumbered by the deceased and his brothers, and was assured by the brother of the deceased that the fight would be a fair one. Henry English drew his pistol, the brother of deceased sought to disarm him, and the pistol was fired. The appellant was nearby, and could have heard all that was said, though whether he did or not was a question of fact, he denying that he

heard the retraction demanded. When the pistol was discharged the appellant shot the deceased, inflicting upon him three wounds, the State claiming that they all entered his back, the appellant claiming that the first shot entered his breast and was fired while the deceased was advancing, after demand that he stop, and that at the time the deceased, by his angry manner and gesture, impressed the appellant with the belief that he was about to draw and use a weapon. Appellant's claim was that when his brother declined combat upon the ground that the brothers outnumbered him, one of the brothers of the deceased urged him to go and get Henry, that he would stand between him and danger, and that the deceased and his brother advanced upon Henry, and as they were about to attack him he drew his pistol, and in a scuffle, in which two other brothers of deceased participated, the pistol was fired. The appellant explained that he armed himself and followed his brother to town to protect him against an unlawful attack.

The court embodied in his charge the law of actual as well as apparent danger, applicable to the defense of both the appellant and his brother, charged that retreat was not necessary, and that it was appellant's right to continue to shoot so long as danger was apparent, and that throughout the matter was to be viewed from his standpoint at the time. He also charged upon request that if appellant armed himself in anticipation of an unlawful attack upon his brother, no inference against him could be drawn from the fact that he was armed. The state of mind of Henry English, so far as it was known to the appellant, was a material inquiry, upon which there was available to the State all legitimate evidence. What the purpose of Henry English was in insulting the deceased, in arming himself, in refusing retraction, in proceeding to the place where a meeting was inevitable, in drawing his pistol and preparing to discharge it, were all questions of fact, as was also appellant's knowledge or information upon the subject, and, though he had not heard the insult given, he, after learning of it, accompanied his brother and killed the deceased, as claimed by appellant to avoid injury to Henry English as well as to himself. Upon the issues involved and submitted to the jury, the proof that the insult was given was, in our judgment, clearly relevant. Guffee v. State, 8 Texas Crim. App., 187. And the fact that the time appellant's brother made the declaration was antecedent to any intent that may have been formed on the part of the appellant to become a party of his brother's quarrel did not require its rejection. If the intent of Henry English was evil, and appellant, being aware of it, sought or agreed to give aid to his brother's undertaking, he, having fired the fatal shot, would stand in the contest on the same footing as would his brother had he killed deceased. It follows from what has been said that in our opinion the ruling made on the former appeal should be adhered to.

An application for continuance on account of the absence of several witnesses was made and overruled. The sufficiency of the diligence to secure the attendance of the absent witness is open to serious question. The Witness Wildman was out of the State. It was averred that appellant became aware of his whereabouts only upon the day the case was called for trial, but the length of time that he had been gone is not stated, and there is no allegation touching the inability to appellant to have learned his whereabouts at an earlier date. The application is a subsequent one, and the testimony of the witness is cumulative. His testimony would have gone to show that on the day of the homicide the deceased, while in company with the witness and other parties, took a drink out of a bottle containing alcohol. The same fact was proved by two other witnesses. The witness Kirkpatrick, it appears from the application, had gone to Burkburnett in Wichita County about a week before the trial, and the witness Price was temporarily in Knox County. What effort was made to get in touch with these witnesses before the trial is not disclosed. nor does it appear that on their non-appearance when the case was called. or when the application for continuance was overruled, any effort was made to secure their attendance. The testimony of these witnesses was mainly upon the incidents immediately attending the homicide. and going to support the appellant's theory that shortly before the first shot was fired the deceased was advancing in the direction of the appellant. This same fact was proved by a number of witnesses, some of them going much further in favor of the appellant than would the absent witnesses, according to the application for continuance, and so far as the absent testimony would have supported appellant's theory of this phase of the case, it was cumulative to a degree that would render a disturbance of the ruling of the trial court in denying the application unwarranted. Branch's Annotated Texas Penal Code, sec. 322, and cases listed. Kirkpatrick, according to the application, would have also testified "that he was at Hay Mauney's when Otho Byers was there, and that he did not hear any conversation there between Henry and Bill English in which Bill said to Henry 'You might as well carry the thing in your hand if you are not going to wear your coat,' or anything to that effect; that at the time he reached Mauney's they were fixing to leave." The purpose of this testimony was to discredit the statement of the witness Byers to the effect that when Henry English started to town he was not wearing a coat, and the appellant remarked to him: "You just as well go up there with the damn thing in your hand as to go up there without a coat on." The evidence of the absent witness to the effect that he did not hear the remark imputed to appellant, we think is not to be characterized as impeaching testimony entirely. It would have been admissible as a circumstance to negative the fact that appellant made the remark. Tull v. State, 55 S. W. Rep.,

61; Stewart v. State, 52 Texas Crim. Rep., 100. It appears but inferentially, however, that the absent witness would have heard the remark if made, and the fact that he would testify to it rests alone upon the averment in the application for a continuance. The assignment on the subject in the motion for a new trial is not supported by the affidavit of the witness. The probability that the alleged absent testimony would have been given and believed, and probably change the result, is not so patent as to warrant us in holding that the trial judge abused the discretion vested in him by the law in refusing to grant a continuance or a new trial. This is emphasized by the want of diligence to which we have referred.

The absence of errors requiring or authorizing a reversal disclosed in the record imposes upon the court the duty to affirm the judgment, and such is its order.

*Affirmed.*

Rehearing denied October 13, 1920.