GERONIMO RAMIREZ v. THE STATE.

No. 13789. Delivered April 15, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*Frank Hartgraves,* of Menard, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is castration, with the minimum penalty of five years in the penitentiary assessed.

A former appeal of this case will be found reported in 112 Texas Crim. Rep., 332, 16 S. W. (2d) at page 814. The prosecution is based under article 1168, P. C.

The undisputed evidence in this case shows that the appellant castrated and removed both of the testicles of the injured party, which was admitted by the appellant. The only difference as to what actually occurred, as shown by the statements of the injured party and of the appellant, was the fact that the injured party contended that the appellant tied him and hung him up by his legs when he castrated him. Appellant admitted that he tied the injured party and castrated him, but contended that he did not hang him up by his legs.

A great part of the record in this case is devoted to an attack upon the selection of the grand jury which found the bill of indictment, and the petit jury which was called to try the appellant was attacked upon the same grounds, it being charged that there had been an unjust discrimination against the Mexican race in Menard County in the organiza-

tion and selection of these bodies. The appellant by sworn plea asked that the indictment be quashed in this case, and the same contention was made on the former trial. This contention was that the jury commission selecting the grand jury and also the petit jury purposely selected no person or persons of the Mexican race or of Mexican descent known as a Mexican to serve on said grand jury or on any petit jury, but on the contrary did exclude from the list of persons to serve on such grand jury and said petit jury all persons of the Mexican race or of Mexican descent, and that said grand jury was composed exclusively of persons of the white race and persons of the color of the Mexican race and of Mexican descent, although constituting about one-tenth of the population of the qualified jurors in and of Menard county and otherwise qualified to serve as such grand jurors and petit jurors, were excluded therefrom on the ground of their race and color and that this was a discrimination against the appellant, since he was a person of the Mexican race and of Mexican descent known as a Mexican, and that such discrimination was a denial to him of the equal protection of the laws and of his civil rights guaranteed by the constitution and laws of the United States. Appellant's contention as shown by bills of exception is as follows: That before the indictment in this case was returned and before the grand jurors who returned said indictment were sworn and impanelled as grand jurors, his wife, who was also charged as a principal with this appellant, challenged the array of said grand jury in her behalf and in behalf of this appellant, he being unable to appear in court by reason of sickness, which said motion was overruled by the court at the October term, 1928; that the appellant moved to quash the indictment herein based on a motion at the October term, 1928, which was again overruled by the trial court and that said motion was again presented at the term at which he was tried and convicted, the April term, 1930, and was again overruled.

The same evidence was offered by agreement as to all of said motions. The witness Joe Flack testified that he had been county attorney for about four years and practiced law in Menard county and had resided there for more than fourteen years; that during his residence there he had not known of a person of the Mexican race known as a Mexican having been chosen as a grand juror or as a petit juror; that he knew that there had been none since he had been county attorney; that he did not think they were qualified to sit on the jury, as those in the county did not know English well enough and were otherwise ignorant; that he knew of no special discrimination against Mexicans as a race in the matter of their being selected on the jury; that he had never heard of the court nor any of its officers discriminating against Mexicans as a race. The sheriff and tax collector of Menard county testified that he had been elected to office two years before; that there were about thirty-five or forty Mexican families living in Menard county and about 150

Mexican citizens in the county, including women and children; that there was a voting population in the county of about 1,500; that about a dozen Mexicans voted in the last primary election in Menard county; that he did not remember that any Mexicans had ever been chosen on the grand jury list or the petit jury list since he had resided in the county; that he had never summoned a Mexican on the jury when it became his duty upon direction of the court to go out and summon jurors and that he did not think the Mexicans of Menard county were intelligent enough or spoke English well enough or knew enough about the law to make good jurors, besides their customs and ways were different from ours, and that for that reason he did not consider them well enough qualified to serve as jurors, but that he thought he could select one or more Mexicans in the county who could speak and understand English well enough and who were otherwise well enough qualified to make as good jurors as some of the white jurors that have been on our juries, but that he did not consider those white jurors well qualified; that the court had never at any time by act or otherwise said or done anything that would indicate that he was discriminating with reference to races. Albert Nauwald testified that he was in the jury commission appointed by the district court that drew the grand jurors who indicted the appellant; that he would not select a negro to sit on the grand jury or petit jury while acting in the capacity of jury commissioner, even though the negro was as well qualified in every way to serve as a juror as any white man; that he was opposed to Mexicans serving on the jury; that he did not consider any individual Mexican's name in connection with making up the jury list; that he did not consider the Mexicans in Menard county as being intelligent enough to make good jurors, so that the jury commission just disregarded the whole Mexican list and did not consider any of them when making up their jury list; that he had lived in Menard county about fourteen years and so far as he knew no Mexican had ever been drawn on any grand jury or petit jury list since he had been in the county; that the court so far as his knowledge went had never said or done anything to discriminate against any race of people because of their race or color and none of the agents or officers of said court had ever done so in so far as he knew. Appellant's bill of exception to the refusal of the court to quash the indictment and the venire for the week was approved with the following qualification: "The proof did not show that there had been a discrimination against the Mexican race; and, other than the proof that about a dozen Mexicans voted in the County at last primary election, there was no evidence that there was any Mexican in the County who possessed the statutory qualification of a juror."

This same evidence was before this court on the former appeal upon appellant's motion to quash the indictment and was disposed of in the opinion by Judge Lattimore in the following language: "There are a

number of complaints at the formation of the grand jury, and at the action of the court in refusing to set aside certain petit jurors, and of other procedure in the trial, none of which in our opinion presents error. * * *"

Appellant also complains in this case, as he did in the former case, of the failure of the court to charge on the issue of aggravated assault and of simple assault. This also was held on said former appeal to present no reversible error. The appellant filed no motion for a rehearing. "A ruling by the appellate court upon a question of law raised on a former appeal will be considered as the law of the case in all subsequent proceedings in the same case, unless the ruling was clearly wrong and harmful." 4 Texas Jur., par. 378; Vargas v. State, 107 Texas Crim. Rep., 666, 298 S. W., 591; Tait v. State, 106 Texas Crim. Rep., 642, 294 S. W., 557; English v. State, 87 Texas Crim. Rep., 507, 224 S. W., 511; Hollingsworth v. State, 85 Texas Crim. Rep., 248, 211 S. W., 454.

There are a number of special instructions asked by appellant and refused by the trial court which were to the effect that if the jury found that the act was committed under the immediate influence of passion arising in the mind of appellant from information from appellant's wife that Lucio Arevalo, the injured party, had had carnal intercourse with her and that such passion was sufficient to render his mind incapable of cool reflection, then such facts might be taken into consideration by the jury as mitigating circumstances in fixing his punishment. Even should it be held that some of these charges should have been given, the appellant having received the lowest punishment fixed by law for the offense, no injury to the appellant is shown by their refusal.

The appellant also complains of the refusal of the court to instruct the jury that they must find beyond a reasonable doubt that the act of the appellant was both wilful and malicious, and further that though they found that the act was done wilfully, they must also find beyond a reasonable doubt that the act was also done maliciously before they could convict. The trial court charged the jury as to the meaning of the words "wilful" and "maliciously", as used in the statute defining the offense with which appellant was charged. He then charged them that if they should find from the evidence beyond a reasonable doubt that appellant did wilfully and maliciously deprive Lucio Arevalo of both of his testicles, as charged, they would find him guilty. Appellant himself testified in substance as follows: That the injured party had gone off with appellant's step-daughter, a woman who had been married and had two children, and had been gone some eight or nine days, when the appellant and his wife went after they and started back home with them in an automobile; that the appellant who was driving said automobile left the road and went to a windmill, as he contended, to get some tools that he had left there, but that he did not see any of them and did not look for said tools very

much; that he intended to take the injured party and his stepdaughter back to the ranch where he lived so that the injured party could get his divorce fixed up and let them get married, and that he had no intention of castrating appellant at that time, but that when he started to leave the windmill and get back in his car, his wife said to him: "What do you want to go with this man down there, what are you going to do with that dog," and he told her that he was going to take them home; that his wife then said to him, "I do not want that dog around the house because he had been making love to me and having intercourse with me and doublecrossed me and then ran off with my daughter and did the same thing." Then the appellant says he got mad and told Lucio to get out of the car and that he did get out of the car and that appellant took a rope out of the car and tied him up and castrated him and took his testicles out and threw them on the ground; that after he had castrated him, he turned him loose; that he didn't kill him because he did not believe in killing. He also testified that he didn't kill him because his religion calls for "not to kill". He testified that he then got in the car with his wife and stepdaughter and left the injured party at the windmill; that he neither called the sheriff nor called any doctor; that he did not tell a single soul about it. The evidence further showed that the windmill was about one and a half miles from any place where people lived. He further testified that some hours later he and a white man went back and got the injured party and took him as far as the railroad track near where some Mexican friends of the injured party lived, and that the injured party got out and walked off.

This evidence of appellant shows in our opinion that the act was done deliberately, as well as wilfully, and without legal justification or excuse. It was done, according to the evidence, by a mature man of forty years of age upon a boy of nineteen, weighing not over 115 pounds. The manner in which it was done also shows that it was intentionally done and the charge of the court covered every legal right under his own testimony that he was entitled to. The court also charged the jury that the burden of proof was on the state to establish by legal evidence beyond a reasonable doubt as to defendant's guilt, and that in case they had a reasonable doubt as to appellant's guilt they would acquit him.

Appellant's bills Nos. 5 and 6 complain of the remarks of the private prosecutor and the district attorney in their arguments to the jury. While it may be conceded that some of the remarks should not have been made, we do not consider that the arguments complained of in this case showed such prejudice to the rights of the appellant under the evidence as would call for a reversal, especially in view of the fact that the minimum punishment was assessed. "The facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly

prejudicial and not so regarded under other circumstances." Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144; McKenzie v. State (Texas Crim. App.), 11 S. W. (2d) 172.

We have considered the other complaints of error that were not passed on at the former appeal of this case as to the proceedings in the trial complained of, none of which in our opinion present such error as would call for a reversal.

Judgment affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We were in error in our opinion in stating that the trial court had qualified a certain bill of exception. As part of a bill of exception, appellant had set up another bill of exception taken upon a prior trial, which included bill showed to have been qualified by the court. In the writing of the opinion on this hearing here, attention was attracted to the qualification to the included bill, and it was stated in the opinion as a qualification to the bill now before us. We think, however, the matter of no materiality.

All of the matters presented before the trial court as affecting the grand jury which returned the indictment herein, were reproduced facts which were before the court at the time of the trial of this case when same was appealed and by us reversed. The testimony claimed to support discrimination against the Mexican race in the drawing of the grand jury, was the same testimony which was before the trial court and this court upon the former appeal. We think our opinion holding that the matters were decided and correctly decided upon the former appeal, is correct. We might add, however, here that we think the evidenc wholly fails to show any discrimination against the Mexican race in the formation of the grand jury that returned this indictment.

We are not impressed that the court below should have charged upon the issue of aggravated assault. The testimony seems clear and uncontradicted that appellant was guilty of the offense here charged in that he castrated the prosecuting witness. We know of no principle of law that would reduce the offense of castration to some lower degree of assault because of the anger, rage or excitement of the accused at the time.

Appellant again raises the supposed error of the refusal of the court to permit him to ask the prosecuting witness questions relative to his affairs with other women than the daughter of appellant, and to show by testimony that prosecuting witness had been intimate with such women,

or that he had attempted to induce them to submit themselves to him. We think such testimony has no proper place in this record.

The motion for rehearing will be overruled.

*Overruled.*